**Ezra T. BENSON, Secretary of Agriculture, Appellant,**

v.

**Arthur SCHOFIELD et al., Appellees.**

**NEW ENGLAND MILK PRODUCERS' ASSOCIATION, a Massachusetts corporation, et al., Appellants,**

v.

**Arthur SCHOFIELD et al., Appellees.**

**Nos. 13127, 13128.**

United States Court of Appeals District of Columbia Circuit.

Argued May 22, 1956.

Decided June 29, 1956.

Petition for Rehearing In Banc Denied Sept. 11, 1956.

720

Mr. Samuel D. Slade, Attorney, Department of Justice, with whom Messrs. Leo A. Rover, U. S. Atty., at the time brief was filed, Herman Marcuse, Attorney, Department of Justice, and Neil Brooks, Assistant General Counsel, Department of Agriculture, were on the brief, for appellant in case No. 13,127. Mr. Oliver Gasch, U. S. Atty., also entered an appearance for appellant in case No. 13,127.

Mr. Reuben Hall, Boston, Mass., of the bar of the Supreme Judicial Court of Massachusetts, *pro hac vice*, by special leave of Court, with whom Messrs. John W. Cragun and Robert W. Barker, Washington, D. C., were on the brief, for appellants in case No. 13,128.

Mr. Edmund Burke, Boston, Mass., of the bar of the Supreme Judicial Court of Massachusetts, *pro hac vice*, by special leave of Court, with whom Mr. Robert W. Lishman, Washington, D. C., was on the brief, for appellees.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellees as officials of a voluntary association of Massachusetts milk producers [1] sought, and the District Court granted, a preliminary injunction which enjoins and restrains the Secretary of Agriculture from promulgating or making effective that part of his proposed order which would extend the limits of the Greater Boston Marketing Area to reach and include milk distributed and sold in certain named towns. Proceedings with respect to proposed amendments to the present order [2] had gone forward in accordance with the applicable rules of practice and procedure,[3] public hearings had been held and a referendum had been conducted. Before the Secretary could promulgate his findings and issue his order with respect to the proposed amendments, this action was commenced. Appellants assert that the trial court erred in granting the preliminary injunction in that the District Court lacked jurisdiction because (1) the action was premature, (2) appellees lack standing and (3) the statutory plan prohibits the suspension of orders pending judicial review. Additionally, appellants insist that the preliminary injunction was improperly granted in that there was a failure to make the required findings of fact and conclusions of law, and in that, without regard to the public interest, it was erroneously assumed that appellees had established that they were likely to prevail.

The District Court concluded that no substantial constitutional question was presented in view of United States v. Rock Royal Co-op, 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. We may assume the validity of the statute, 7 U.S. C.A. § 608c.

■ It is common knowledge that the production and marketing of milk are vital and that the problems of the industry have long engaged the notice of the Congress, the state legislatures and the

---

1. The association is known as Central Massachusetts Milk Producers' Association comprised of some 97 milk producers who market their milk in the towns of Framingham, Natick, Wayland and Weston which are proposed to be added to the Greater Boston Marketing Area.

2. Milk Order No. 4, 7 C.F.R. 904 (1955).

3. 7 C.F.R. 900 (1955).

courts. Citations to the numerous source references are here unnecessary. It is sufficient to point up our present problem that a few general observations be made. Since there are daily fluctuations in the demand as well as periodic and seasonal fluctuations in supply, even flow and equal distribution of available fluid milk are impossible of achievement. The quantities of fluid milk required to meet normal daily demands in an off-season, as a measure of normal need, may be vastly exceeded by large surpluses in full production periods. Such surpluses, because milk is highly perishable, are the bane of the industry. The Boston Milk Order[4] provides for two minimum price classifications: Class I milk which includes fluid milk and certain fluid milk products, and Class II milk which includes quantities in excess of what is required to meet current demands for fluid milk as a food beverage, which surplus here includes all other milk products such as butter, cheese, milk powder and similar items.

Fluid milk as a food beverage commands a much higher price than quantities which may not be so consumed and which must be utilized in other categories. It is natural that an individual producer will seek to sell advantageously his more profitable fluid milk.[5] Still the public interest in an assured "normal" supply, as well as a proper concern for the economic status of all needed producers, as related to the economy as a whole, caused Congress to direct its attention to the complexities of the milk industry as treated in the Agricultural Marketing Agreement Act of 1937.[6]

To effectuate the purposes of the Act,[7] including an equitable distribution of the burden of surplus milk, the Secretary of Agriculture has been given power in certain circumstances to issue orders which are applicable, not to producers or retailers, but to producers as handlers.[8] Here the Secretary acted pursuant to the statutory plan, but the authorized Order has not been issued since it must be predicated upon findings to be made by the Secretary,[9] which he was here prevented from making because of the assailed injunction.

The order of the District Court must be reversed for reasons we shall state.

■ Aside from the fact that the Secretary's order has not been issued, and may never be issued, and that, accordingly, the complaint is premature,[10] there would be scant gain if we chose to rest on that ground. Allowing the Secretary to complete his function under the Act, assuming he might make the required findings, would simply result in his doing so, whereupon, it may be supposed his order would be freshly attacked in a similar proceeding. Plain waste of time, effort and money plus possibly continued thwarting of the effectiveness of the legislative and administrative scheme would merely add up to frustration, surely not an end result to be encouraged by the action of the courts. For like reasons we pass over the point that the District

---

4. Supra note 2; and see H. P. Hood & Sons v. United States, 1939, 307 U.S. 588, 593–594, 59 S.Ct. 1019, 83 L.Ed. 1478, for a description of the "blended" or weighted average price plan.

5. Appellees here sold all but 3% of their milk at Class I rates although the industry must carry a daily supply of 15% to 20%. Boston "obtains about 90% of its fluid milk from states other than Massachusetts." H. P. Hood & Sons v. Du Mond, 1949, 336 U.S. 525, 526, 69 S.Ct. 657, 659, 93 L.Ed. 865.

6. 50 Stat. 246, as amended 7 U.S.C.A. §§ 601–659; some understanding of the intricacies of the problems may be gleaned from United States v. Rock Royal Co-op, 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L. Ed. 1446 and Nebbia v. People of State of New York, 1934, 291 U.S. 502, 54 S. Ct. 505, 78 L.Ed. 940

7. 7 U.S.C.A. § 608b.

8. As defined in § 608c of the Act, which includes associations of producers.

9. 7 U.S.C.A. § 608c (9); and see H. P. Hood & Sons v. United States, 1939, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478.

10. United Air Lines v. Civil Aeronautics Board, 1955, 97 U.S.App.D.C. 42, 228 F.2d 13, 15–16 and cases cited.

Court failed to make the findings of fact and conclusions of law upon which the injunction was based.[11] A remand on that score would advance nothing.

Rather, we conclude that this action may not be maintained at all.

■ In the first place, so far as handlers[12] are concerned, including producers as handlers, the Act expressly provides that when the Secretary has promulgated his order, it becomes "final, if in accordance with law"[13] subject to review only as the Act provides.[14] Even then, upon such review, if there has been error, the court must remand for proceedings "in accordance with law," and the pendency of proceedings under the subsection noted "shall not impede, hinder, or delay the United States or the Secretary * * * from obtaining relief * * *" as provided in § 608a(6). There is no provision authorizing interference with the administrative plan. When we have in mind the purposes of the legislation, it is difficult to see how Congress in these respects could more effectively have expressed its will than is evident from a mere reading of the Act. If appellees were to be deemed handlers, they would be bound by the administrative remedy and the judicial review provisions of the Act. Appellees, viewed as producers, being unregulated, are given by the Act no greater status than the handlers who are regulated.

■ In the second place, appellees "to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law."[15] Mere loss of income in consequence of the action of Government or economic disadvantage, by itself, constitutes *damnum absque injuria* which does not confer standing.[16] Moreover, there is no certainty of any such loss, for Milk Order No. 4 prescribes merely minimum prices. Appellees realize fully that all this is so, as their amended complaint and their brief make clear.

■ They argue accordingly that they derive standing because of a deprivation of the benefit of the provisions[17] of the Act entitling them to notice of and to attend hearings and because of the manner in which the Secretary conducted the required referendum. The denial of such rights is said to stem from a decision and findings lacking substantial support in the evidence and from a referendum which was unfair. In the trial court, appellees' counsel expressly conceded the findings which related to the proximity of the subject area "to Boston, to the transportation improvements, to the growth in population" of the affected towns. While challenging in argument yet other findings, appellees point to no portion of the hearings lacking in substantial evidence to support such findings. Absent a demonstration that the Secretary's action was in fact arbitrary, as alleged, we cannot deny a presumption of its validity.[18] Moreover, the record

11. Public Service Comm. of Wisconsin v. Wisconsin Tel. Co., 1933, 289 U.S. 67, 53 S.Ct. 514, 77 L.Ed. 1036; Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 319, 60 S.Ct. 517, 84 L. Ed. 774.

12. According to the complaint, appellee Schofield is President and appellee Adams is Secretary-Treasurer of Central Massachusetts Dairy Association, a voluntary association of milk producers. The action was commenced by the named appellees in "behalf of themselves and the other members of the Association who are similarly situated and of whom they are fairly representative." See 7 U.S.C.A. § 608c.

13. 7 U.S.C.A. § 608c(15) (A).

14. 7 U.S.C.A. § 608c(15) (B). As to circumstances under which other relief may be available, see Stark v. Wickard, 1944, 321 U.S. 288, 308, 64 S.Ct. 559, 88 L.Ed. 733.

15. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 125, 60 S.Ct. 869, 876, 84 L.Ed. 1108.

16. Kansas City Power & Light Co. v. McKay, 1955, 96 U.S.App.D.C. 273, 225 F. 2d 924, 934, certiorari denied 1955, 350 U.S. 884, 76 S.Ct. 137; United Milk Producers of New Jersey v. Benson, 1955, 96 U.S.App.D.C. 227, 225 F.2d 527; and see generally, Stark v. Wickard, 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.

17. 7 U.S.C.A. § 608c(3, 8, 9).

18. Pacific States Box & Basket Co. v.

makes indisputably clear that the Secretary acted, so far as he has been permitted to act, only after notice and public hearings in which all interested parties, including appellees, were participants, either in person or through counsel or both. We cannot doubt the validity of the findings.

Appellees beam their fire at the manner in which the referendum was conducted, particularly as to the voting plan. They seem to argue that voting must be limited to the local farmers and the suppliers of two handlers in the four towns proposed to be added to the Boston Milk Marketing Area. The short answer is that the Act contains no such requirement. The agent of the Secretary designated to conduct the referendum among the producers [19] supplied for the record a detailed account of the procedure followed, comporting both with the requirements of and as permitted by the Act.[20] We find no substance in this line of attack.

Referring further to the statutory rights already mentioned above, appellees finally urge " * * * since they allege that they have been deprived of those rights it cannot be argued that they have suffered no legal wrong." After thus beating the cow around the barn, appellees claim standing to vindicate a "legal wrong" because of language to be found in Stark v. Wickard.[21] But there the Court pointed out: "It is because every dollar of deduction comes from the producer that he may challenge the use of the fund. The petitioners' complaint is not that their blended price is too low,

but that the blended price has been reduced by a misapplication of money deducted from the producers' minimum price."[22] We still come back to the proposition, as the Stark case points out,[23] that absent *"justiciable individual* rights," (italics ours) the detriment complained of is *damnum absque injuria*.[24] In short, the public interest is paramount.

"Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control."[25]

Here the Secretary has made the public interest findings contemplated by the Act. Even consumers as such have only a general interest in the execution of the law, and as previously noted, the proposed order by the very terms of the Act shall not be applicable to any producer in his capacity as such. Since it is clear that Congress has not "intended to create a statutory privilege protected by judicial remedies," [26] appellees lack a legal right. For the reasons given, they have demonstrated no legal wrong.[27]

It follows, we conclude, that the complaint should have been dismissed. The

White, 1935, 296 U.S. 176, 185–186, 56 S.Ct. 159, 80 L.Ed. 138.

19. As defined in Milk Order No. 4, as amended, and as proposed to be amended.

20. Cf. H. P. Hood & Sons v. United States, supra note 4, 307 U.S. at pages 597–599, 59 S.Ct. at pages 1024–1025.

21. 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.

22. Id., 321 U.S. at pages 308–309, 64 S. Ct. at page 570.

23. Id., 321 U.S. at page 310, 64 S.Ct. at page 571.

24. Id., 321 U.S. at page 304, 64 S.Ct. at page 568; here was no "deduction of a sum to pay the United States a sales tax on milk sold." Id., 321 U.S. at page 303, 64 S.Ct. at page 567.

25. Munn v. Illinois, 1877, 94 U.S. 113, 126, 24 L.Ed. 77.

26. Stark v. Wickard, supra note 14, 321 U.S. at page 306, 64 S.Ct. at page 569.

27. Cf. Tennessee Electric Power Co. v. T.V.A., 1939, 306 U.S. 118, 140, 59 S.Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 479, 58 S.Ct. 300, 82 L.Ed. 374.

order of the District Court is reversed, and the case is remanded for further proceedings conformably to the views herein expressed.

Reversed and remanded.