**Donald UELMAN and Pure Milk Products Cooperative, Plaintiffs,**

v.

**Orville FREEMAN, Secretary of Agriculture of the United States of America, Defendant.**

**No. 66–C–234.**

United States District Court
E. D. Wisconsin.

May 19, 1967.

George M. St. Peter, Fond du Lac, Wis., for plaintiffs.

James B. Brennan, U. S. Atty., by Robert J. Lerner, Asst. U. S. Atty., Milwaukee, Wis., John C. Chernauskas, Atty.,

U. S. Dept. of Agriculture, Office of the Gen. Counsel, Washington, D. C., for defendant.

## OPINION AND ORDER

REYNOLDS, District Judge.

This action was brought by a cooperative association of producers and a producer, Donald Uelman, who is a vice-president of said cooperative, to enjoin the Secretary of Agriculture from applying § 1039.54 of the Milwaukee Milk Marketing Order (7 C.F.R. 1039.54). The effect of plaintiffs' action would be to render ineffective the supply-demand adjustment factor of minus 24 cents in the Class I price computation of the Milwaukee Milk Order and thus increase said Class I price by 24 cents.

Defendant filed an answer to the complaint and also a motion to dismiss the action. An oral argument was had before the Court, at which plaintiffs appeared by their attorney, George St. Peter, and defendant by James B. Brennan, United States Attorney, through John C. Chernauskas, attorney, United States Department of Agriculture.

Plaintiffs contend that § 1039.54 of the Milwaukee Milk Order is invalid in that it allows the Secretary of Agriculture to determine, without a hearing, a price factor required in the computation of the Class I price which is equivalent to a similar factor contained in the Order and which is no longer available. Plaintiffs contend that §§ 608c(3), (4), and (18) of the Act require a public hearing to be held before a determination of an equivalent price factor can be made. Plaintiffs allege that if the Secretary had not replaced the price factor involved here with an equivalent, the Milwaukee Class I price would have increased by 24 cents per hundredweight of milk. Plaintiffs allege that the Secretary's action in replacing the price factor and preventing them from receiving the increased price is causing them irreparable damage.

Defendant contends that plaintiffs' complaint should be dismissed on the ground that plaintiffs, as producers, are not regulated by the Marketing Order and thus lack standing to contest a provision in the Marketing Order regulation. Defendant further contends that the complaint should be dismissed on the merits because the Secretary's determination of an equivalent price factor, without a hearing, is authorized by the Act and required by the Marketing Order. Defendant asserts that:

1. Section 608c(18) of the Act sets forth the basic criteria which the Secretary must apply in establishing the level of Class prices, and in establishing or changing such level of price the Secretary must do so on the basis of evidence received at a public hearing;

2. That § 608c(5) (A) of the Act states that the Secretary may fix, or provide a method for fixing, Class prices and that § 1039.54 of the Order, which requires the Secretary to determine an equivalent price factor, is an inherent and necessary method to maintain the Class I price level established under § 608c(18) of the Act; and

3. That in any event § 608c(7) (D) of the Act authorizes provisions in the Order which are incidental and necessary to effectuate the terms and conditions of the Order and that a determination of such as involved here is necessary so that the Order, i. e., the Class I price level, may continue to operate when a factor necessary to the Class I price computation is not available.

## BACKGROUND

Plaintiff, Pure Milk Products Cooperative, is an association of producers, and the milk of certain of the cooperative's members is sold to handlers regulated by the Milwaukee Milk Marketing Order. Plaintiff, Donald Uelman, is a producer who is a vice-president of the cooperative. Neither Uelman, the cooperative, nor any of the cooperative's members are regulated by the Milwaukee Marketing Order.

Milk Marketing Order No. 39 (7 C.F. R. 1039), which regulates the handling of milk for the Milwaukee, Wisconsin,

Milk Marketing Area, was issued by the Secretary of Agriculture in 1950 (15 Fed.Reg. 6598). As amended from time to time through the public hearing process, the Marketing Order has been effective without interruption since that date. From its inception, the minimum Class prices under the Order have been established under the authority contained in §§ 8c(5) (A) [7 U.S.C.A. § 608c(5) (A)] and 8c(18) [7 U.S.C.A. § 608c(18)] of the Act. In this connection the Secretary, pursuant to § 8c(5) (A), provided a method for fixing minimum prices under the Order and, pursuant to § 8c(18), established a level of minimum prices as will reflect the factors specified in that section, insure a sufficient supply of pure and wholesome milk for the marketing area and be in the public interest. The Marketing Order has thus operated uninterruptedly for a period of over sixteen years, and minimum Class prices have always been fixed under the authority of §§ 8c(5) (A) and 8c(18) of the Act.

The Class I price provisions of the Milwaukee Order were based on evidence received at a public hearing and were placed in the Order after being favorably voted upon by more than 75% of the producers supplying the market.* The Milwaukee Class I price is computed by utilizing the several pricing factors set forth in the Order which are:

1. The basic formula price (§ 1039.-50) resulting from prices paid for manufacturing milk in Minnesota and Wisconsin adjusted to 3.5% butterfat basis at the rate of the butter price times 0.120;

2. To this add $1.08, $.68 or $.88 depending on the month involved (§ 1039.-51(a)); and

---

* Under 7 U.S.C. § 608c(12), cooperative associations, such as plaintiff, are authorized to cast a block vote for its producer members. Plaintiff cooperative has cast a block vote for its members when amendments to the Milwaukee, Chicago, and other orders to which it markets milk were up for consideration.
The Milwaukee Order is an "individual handler pool" type of Order (7 U.S.C. § 608c(5) (B) (i)), and, therefore, the ap-

3. Add or substract the amount resulting from the supply-demand ratio computed under the Chicago Order (7 C.F.R. 1030) but not to exceed plus 24 or minus 24 cents (§ 1039.51(a)). In the event any of these pricing factors is not available, then § 1039.54 of the Order requires that the Secretary shall determine an equivalent pricing factor to be utilized in the price computation.

On May 1, 1966, the Chicago Milk Order was terminated by vote of the producers serving the market. Accordingly, as of May 1, 1966, the Chicago supply-demand adjustment factor would no longer be available for use in computing the Milwaukee Class I price. In view of this, the Secretary, pursuant to § 1039.54 of the Milwaukee Order, issued an order on April 8, 1966, determining an equivalent supply-demand factor. The Chicago supply-demand factor had been at a level of minus 24 cents for more than five years and would have continued at the minus 24 cents level if the Chicago Order had remained in effect. In these circumstances, the Secretary determined that the equivalent factor should continue to be minus 24 cents. This resulted in a continuation of the existing level of the Milwaukee Class I price.

## PLAINTIFFS LACK STANDING TO SUE

The defendant has moved to have the Court reconsider its earlier determination that plaintiffs were proper parties to maintain this action. The Court has re-examined the positions of the parties and the authorities with respect to the question of standing to sue and is now of the opinion that the plaintiffs lack standing to sue.

proval of three-fourths or more of the producers in that market is necessary before a federal milk order, or any amendment thereto, can become effective. The plaintiff cooperative represents approximately 30% of the producers whose milk is priced and pooled under the Milwaukee Milk Marketing Order and thus, through its vote, has the power to determine whether any amendment to the Milwaukee Order shall be made effective.

The Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C.A. § 601 et seq. and milk orders issued thereunder impose regulations solely on handlers of milk. By its terms the Act expressly provides that no order issued thereunder shall be applicable to any producer in his capacity as a producer. 7 U.S.C.A. § 608c(13) (B).

As to persons who are regulated by milk marketing orders (handlers), such Act specifically provides an administrative proceeding subject to judicial review for the purpose of challenging the provisions of a marketing order of or any obligation thereunder. 7 U.S.C.A. § 608c(15) (A) and (B). Before a handler may seek judicial relief from the provisions of or obligations imposed under a marketing order, he must exhaust his administrative remedy before the Secretary of Agriculture. United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946). Plaintiffs as producers who are unregulated by the Act are given no greater status by the Act than the handlers who are regulated.

The decision of the Court of Appeals in Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719 (1956), cert. denied 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 324 (1957), is controlling here upon the issue of jurisdiction. In that case, milk producers brought an action against the Secretary of Agriculture to enjoin him from promulgating or making effective that part of his order which would extend the limits of the Greater Boston Marketing Area to reach and include milk distributed and sold in certain named towns. The plaintiffs, like those in this action, claimed irreparable injury would result to them because the extension of the marketing area would result in lower returns to them. The Court of Appeals in reversing the lower court and in ordering the dismissal of the complaint said at page 722 of 236 F.2d:

" * * * appellees 'to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law.' Mere loss of income in consequence of the action of Government or economic disadvantage, by itself, constitutes *damnum absque injuria* which does not confer standing. * * * * "

Similarly, in United Milk Producers of New Jersey v. Benson, 96 U.S.App.D.C. 227, 225 F.2d 527 (1955), producers of milk brought an action against the Secretary of Agriculture challenging a marketing order and alleging as their injury that the blended price payable under the order was less than they might receive were it not for the provisions of said order.

In sustaining the lower court's dismissal of plaintiffs' complaint for lack of standing to maintain their action, the Court of Appeals said at page 529:

"The decisions referred to make clear (1) that injury from lawful competition is *damnum absque injuria* and affords no standing to the party damaged to seek judicial relief therefrom, absent statutory aid to standing; (2) that competition otherwise lawful is not unlawful because made more injurious by governmental action assumed to be invalid, with possible exceptions not here relevant, so long as no legal right of the party injuriously affected is invaded, see Tennessee Power Co. v. T. V. A., supra, 306 U.S. at pages 139, 140, 59 S.Ct. at page 370; and (3) that no legal right of one in a situation comparable in all material respects to plaintiffs' is invaded by lawful competition that is facilitated by such governmental action, and thereby made more economically injurious than otherwise would be the case."

See also Marietti v. Freeman (D. R.I., Sept. 30, 1964) and Independent Dairymen's Cooperative v. Freeman (N.D. Texas, Oct. 27, 1964).

Plaintiffs seek to rely on Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). This Court is of the opinion that such reliance is misplaced. The Court in Calhoun v. Freeman, 114 U. S.App.D.C. 385, 316 F.2d 386 (1963), re-

jecting application of the *Stark* case, summarized *Stark* in footnote 4 on page 388 as follows:

> " * * * There, certain producers regulated by the Boston [milk marketing] order had a proprietary interest in the Government-administered settlement fund created by their sales, and were held to have standing to challenge unauthorized diversions from the fund. * * * "

Here there is no proprietary interest of the plaintiffs involved. The crux of the allegations is that the Secretary acted contrary to the Act, and if the alleged improper action were corrected, the price of Class I milk would be increased 24 cents per hundredweight.

The holding of the *Stark* case was, at pages 308–309 of 321 U.S., at page 570 of 64 S.Ct.:

> " * * * It is because every dollar of deduction comes from the producer that he may challenge the use of the fund. The petitioners' complaint is not that their blended price is too low, but that the blended price has been reduced by a misapplication of money deducted from the producers' minimum price."

*Schofield*, supra, elaborates at page 723 of 236 F.2d:

> " * * * We still come back to the proposition, as the Stark case points out, that absent *'justiciable individual rights,'* * * * the detriment complained of is *damnum absque injuria.* In short, the public interest is paramount."

Here, plaintiffs are claiming that their price is too low, and therefore their claim is one rejected in Stark v. Wickard, supra.

Accordingly, the plaintiffs have no standing to maintain this action, and the defendant's motion to dismiss said complaint for want of jurisdiction must be granted.

## ASSUMING PLAINTIFFS DO HAVE STANDING TO SUE, THEY COULD NOT PREVAIL ON THE MERITS

It is the position of the plaintiffs that the failure of the Secretary to give notice and hold a hearing prior to the entry of the order of April 8, 1966, in which he determined an equivalent pricing factor, violated the Administrative Procedure Act, 5 U.S.C.A. § 1003, and also violated the Agricultural Marketing Agreement Act of 1937, more particularly 7 U.S.C.A. §§ 608c(3), (4), and (18).

Defendant's position is that under the Act it is not necessary to give notice and hold a public hearing when the Secretary makes a determination of an equivalent pricing factor which allows the price to continue at the level found, after notice and hearing, to be in accord with the standards of the Act.

In the light of the issue presented it is necessary to discuss the policy, procedures, and criteria for fixing prices which were set forth in the Act by Congress.

The policy of the Act is stated in § 602 (7 U.S.C. § 602):

> "It is declared to be the policy of Congress—

> "(1) Through the exercise of the powers conferred upon the Secretary of Agriculture under sections 601–604, 607, 608, 608a, 608b, 608c, 608d, 608e–1, 608f–612, 613, 614–619, 620, 623 and 624 of this title, to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices as defined by section 1301(a) (1) of this title.

> "(2) To protect the interest of the consumer by (a) approaching the level of prices which it is declared to be the policy of Congress to establish in subsection (1) of this section by gradual correction of the current level at as rapid a rate as the Secretary of Agriculture deems to be in the public interest and feasible in view of the current consumptive demand in domestic

and foreign markets, and (b) authorizing no action under sections 601–604, 607, 608, 608a, 608b, 608c, 608d, 608e–1, 608f–612, 613, 614–619, 620, 623 and 624 of this title which has for its purpose the maintenance of prices to farmers above the level which it is declared to be the policy of Congress to establish in subsection (1) of this section.

\* \* \* \* \* \*

"(4) \* \* \* to establish and maintain such orderly marketing conditions for any agricultural commodity enumerated in section 608c(2) of this title as will provide, in the interests of producers and consumers, an orderly flow of the supply thereof to market throughout its normal marketing season to avoid unreasonable fluctuations in supplies and prices."

Congress, after stating the declared policy of the Act, then set forth the procedures to be applied by the Secretary in setting milk prices under a marketing order. Sections 608c(3) and (4) of the Act provide:

"(3) Notice and hearing.

"Whenever the Secretary of Agriculture has reason to believe that the issuance of an order will tend to effectuate the declared policy of sections 601–604, 607, 608, 608a, 608b, 608c, 608d, 608e–1, 608f–612, 613, 614–619, 620, 623, and 624 of this title with respect to any commodity or product thereof specified in subsection (2) of this section, he shall give due notice of and an opportunity for a hearing upon a proposed order.

"(4) Finding and issuance of order.

"After such notice and opportunity for hearing, the Secretary of Agriculture shall issue an order if he finds, and sets forth in such order, upon the evidence introduced at such hearing (in addition to such other findings as may be specifically required by this section) that the issuance of such order and all of the terms and conditions thereof will tend to effectuate the de-

clared policy of sections 601–604, 607, 608, 608a, 608b, 608c, 608d, 608e–1, 608f–612, 613, 614–619, 620, 623, and 624 of this title with respect to such commodity."

With regard to the price level of milk, Congress directed the Secretary to apply the following criteria (7 U.S.C. § 608c (18)):

"(18) Milk prices.

"The Secretary of Agriculture, prior to prescribing any term in any marketing agreement or order, or amendment thereto, relating to milk or its products, if such term is to fix minimum prices to be paid to producers or associations of producers, or prior to modifying the price fixed in any such term, shall ascertain the parity prices of such commodities. The prices which it is declared to be the policy of Congress to establish in section 602 of this title shall, for the purposes of such agreement, order, or amendment, be adjusted to reflect the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk or its products in the marketing area to which the contemplated marketing agreement, order, or amendment relates. Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 608b of this title or this section, as the case may be, that the parity prices of such commodities are not reasonable in view of the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area to which the contemplated agreement, order, or amendment relates, he shall fix such prices as he finds will reflect such factors, insure a sufficient quantity of pure and wholesome milk, and be in the public interest. Thereafter, as the Secretary finds necessary on account of changed circumstances, he shall, after due notice and opportunity for hearing, make adjustments in such prices."

Congress also determined the provisions which should be included in a milk marketing order (7 U.S.C. §§ 608c(5) and 608c(7)). Note particularly § 608c (5) (A) which provides:

"(5) Milk and its products; terms and conditions of orders.

"In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) of this section) no others:

"(A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, *or providing a method for fixing*, minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. * * *" (Emphasis added.)

Congress also determined that other order provisions may be necessary to the effective operation of the Order so § 608c (7) (D) provides for provisions:

"(D) Incidental to, and not inconsistent with, the terms and conditions specified in subsections (5)–(7) of this section and necessary to effectuate the other provisions of such order."

An analysis of the above provisions of the statute reveals that Congress established a definite plan with regard to pricing milk under a milk order. This plan may be stated as follows:

1. The Secretary is required to ascertain and establish class price levels in accord with the policy objectives stated in the Act (7 U.S.C. § 602) by utilizing the criteria provided in the Act (7 U.S.C. § 608c(18)).

2. In ascertaining the appropriate class price level, the Secretary must provide due notice and hold a public hearing at which all interested parties have an opportunity to present evidence and views. Any resulting order or an amendment thereto must be based on the evidence received at such hearing (7 U.S.C. §§ 608c(3), (4), and (18)).

3. The marketing order must contain the relevant terms and conditions stated in the Act (7 U.S.C. §§ 608c(5) and (7)). As to prices, § 608c(5) (A) of the Act requires the Secretary to fix, *or provide a method for fixing*, Class prices.

Plaintiffs admit that, acting pursuant to the mandates of the Act, the Secretary held a public hearing relating to the Class I price level and, based on the evidence received, proposed certain amendments to the Milwaukee Order. After a favorable vote by more than 75% of the producers serving the market, those provisions were made a part of the Order and are in pertinent part as follows:

"§ 1039.50 Basic formula price.

"The basic formula price shall be the average price per hundredweight for manufacturing grade milk, f.o.b. plants in Wisconsin and Minnesota, as reported by the Department for the month: *Provided*, That such reported price shall be adjusted to a 3.5 percent butterfat basis at the rate of the butter price times 0.120 and rounded to the nearest cent.

"§ 1039.51 Class prices.

"Subject to the provisions of §§ 1039.52 and 1039.53, the class prices per hundredweight for the month shall be as follows:

"(a) *Class I milk price.* The price for Class I milk shall be the basic formula price for the preceding month plus $1.08 August through November; $0.68 March through June and $0.88 in other months: *Provided*, That such Class I price shall be increased or decreased, respectively, 2 cents for each full percent that the adjusted supply-demand ratio computed pursuant to Part 1030 (Chicago) of this chapter is greater or less than 72 percent, but shall not be increased or decreased more than 24 cents because of such adjusted supply-demand ratio.

"(b) *Class II milk price.* The Class II milk price shall be the basic formula price for the month.

\* \* \* \* \* \*

"§ 1039.54 Use of equivalent prices.

"If for any reason, a price quotation required by this order for computing class prices or for other purposes is not available in the manner described, the market administrator shall use a price determined by the Secretary to be equivalent to the price which is required."

Plaintiffs allege that § 1039.54 of the Order requires the Secretary to determine an equivalent "Class I price." As this Court reads this section, it clearly shows that it pertains to equivalent price *factors* utilized in the *computation* of the Class I price.

The provisions in the Order which provide the "method for fixing" Class prices were placed in the Order as a result of the public hearing process. As to such order provisions, the public hearing process resulted in the establishment of factors critical to the establishment of a Class I price level satisfying the standards of § 608c(18) of the Act. The public hearing further provided means for providing any of the critical price factors when for any reason one might become unavailable and in this way assured continuation of the appropriate Class price level.

Additionally, § 1039.54 of the Order which provides for such determinations is authorized under § 608c(7) (D) of the Act as necessary and incidental to effectuate the pricing provisions of the Order, since such determinations are necessary to allow the price provisions of the Order to operate when one of the factors making up such price is unavailable. In the absence of this provision the proper price could not be computed.

This Court is of the opinion that the Act authorizes the Secretary to establish a method for fixing prices; that the Milwaukee Order, entered after notice and hearing, embodies such a meth-

od; that the method provides for the use of equivalent prices; and that when the Chicago Order terminated, the Secretary properly determined an equivalent for the supply-demand adjuster, thereby maintaining the price for Class I milk at the level at which it had previously existed under the Chicago Order. Notice and hearing were not required for this determination under the method for fixing prices in the Milwaukee Order.

For the foregoing reasons,

It is ordered that plaintiffs' complaint must be and it is hereby dismissed.