**GEORGE BENZ & SONS, Plaintiff,**

v.

**Clifford M. HARDIN, Secretary of Agriculture, Defendant.**

No. 4–71 Civ. 58.

United States District Court, D. Minnesota, Fourth Division.

April 25, 1972.

marketing order was promulgated. Plaintiff was an unregulated milk handler, who had and has its principal place of business outside the original geographical area and has sold less than the minimum quantity of fluid milk within the regulated area but who now finds itself situated in the expanded and regulated area. The applicable statute permits such an aggrieved handler to file "a bill in equity" for review and "If the court determines that such ruling is not in accordance with law it shall remand" with directions or "take such further proceedings as . . . the law requires." It is clear from numerous decisions that the court's function here is not *de novo* but is an appellate one and is limited to a determination as to whether plaintiff received due process and, on the merits, to a determination as to whether or not the order or ruling under review is supported by substantial evidence in the record. United States v. Mills, 315 F.2d 828 (4th Cir.), cert. denied sub nom. 375 U.S. 819, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963); Ogden Dairy Co. v. Wickard, 157 F.2d 445 (7th Cir. 1946), cert. denied 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1276 (1947).

Robert O. Sullivan, St. Paul, Minn., for plaintiff.

Victor W. Palmer, Dept. of Agriculture, Washington, D. C. and Neil J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

NEVILLE, District Judge.

■ This is an action brought under 7 U.S.C. § 608c(15) (B), with jurisdiction conferred on this court thereunder and under 7 U.S.C. § 608a(6), to review a decision of the Secretary of Agriculture amending the Minneapolis-St. Paul Milk Marketing Order No. 68 by enlarging its geographical area to include a number of counties in Minnesota contiguous or proximate to the area established circa 1945 when the original milk

■ Plaintiff attacks the Secretary's order on the ground first that there is no substantial evidence to support the expansion and second that it has been denied due process in that in obtaining the required approval of at least two-thirds of the milk producers in the area as required by 7 U.S.C. § 608c(9) (B) (i), the Secretary through his delegate violated the "one man one vote" rule of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its progeny and in other ways conducted an illegal referendum. Defendant has moved for summary judgment which motion was argued originally September 14, 1971 and on the court's own invitation re-argued March 22, 1972.

To determine whether the Secretary's order is supported by substantial evidence, the court has read the entire

three volumes of transcript of the hearing AO 178–A23 of June 25, 1968 before the Department of Agriculture and examined another large volume of exhibits, briefs and proposed findings. The court is satisfied that there was substantial evidence to support the Secretary's findings and order. The field is one of unusual expertise. Many if not most of the arguments advanced against expansion were discussed, together with the reasons therefor, in United States v. Mills, *supra,* where a milk marketing area included the city of Baltimore and a number of adjacent rural counties. The milk marketing act of 1937 has been held constitutional United States v. Rock Royal Co-op, 307 U.S. 533, 59 S.Ct. 933, 83 L.Ed. 1446 (1939), including the provision for a referendum requiring approval of two-thirds of the producers in the area. That case explains the scheme of the milk marketing orders and their operation and this court will not purport to restate such. In the case *sub judice* far more than two-thirds of the producers approved in a referendum conducted by the Secretary. At the second hearing before this court on the motion for summary judgment the court became aware for the first time that the order covering the enlarged geographical area had actually been in effect for a period of some two and a half years and handlers had been operating thereunder. The court was tempted under 7 U.S.C. § 608c(15) (B) to exercise its power of remand to the Department of Agriculture for the taking of additional evidence to determine how the enlarged plan is in fact operating, rather than rely on prospective evidence based on figures and calculation now nearly five years old predicting then the future effect of enlarging the regulated area. A careful reading of the law, however, and the fact that this is not a *de novo* proceeding has discouraged the court from so doing. The remedy for a dissatisfied handler is found in other sections of the law permitting him to petition the Secretary of Agriculture for a new hearing where up-to-date conditions would be examined. The court, though curious as to how the enlarged plan has been operating, is satisfied that the Secretary's Amending order was based on substantial evidence at the time of the 1968 hearings and should be affirmed and not set aside, nor *should any injunction issue.*

Plaintiff attacks the referendum on constitutional grounds. 7 U.S.C. § 608c(9) as above stated requires approval of two-thirds of the producers in the area before a milk marketing order or an amendment thereto can be issued and Section 608c(12) provides in part:

". . . the Secretary shall consider the approval or disapproval by any cooperative association of producers . . . as the approval or disapproval of the producers who are members of, stockholders in, or under, contract with, such cooperative association of producers."

■ Cooperatives Land O'Lakes and Twin City Milk Producers Association voted for their producer members in the referendum. Plaintiff asserts that this violates the one man one vote rule and *further is contrary to and in violation of* Minn.Stat. § 308.07, Subd. 3. Preliminarily it should be observed that there can be no complaint that some 542 producers within the original geographical area were entitled to and did vote in the referendum Freeman v. Hygeia Dairy Co., 326 F.2d 271 (5th Cir. 1964); Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719 (1956). The claim that votes of the 542 producers were duplicated in that they were cast by both Land O'Lakes and Twin City Milk Producers Association is gainsaid by the affidavit of the Market Administrator who conducted the referendum that he was alert to this and checked the voting against each individual member's name and counted only one vote for each eligible voter thereby eliminating any possible duplication. There was no evidence to the contrary.

Even were there a duplication, it is without prejudice or harm to plaintiff for the total vote for approval was 4,202 with 143 against. Eliminating these 542 or even adding them to the 143, there still remains a vote for approval in excess of two-thirds of all producers voting or of an estimated 4,569 producers eligible to vote.

■ The "one man one vote" challenge to the constitutionality of the two-thirds requirement is without merit. In the first place, plaintiff's producers, if they voted, presumably voted against the approval. Query whether they or plaintiff have standing to object even were the statute faulty. It is the voter who votes with the majority but where the majority is less than two-thirds who may complain that his vote is wasted, dissipated or doesn't count. One who is in the minority, whether it be a minority of 49% or 10% has no grievance in that his vote counted fully in any event and being in the minority there was and is nothing about which he can complain. In fact one voting against had added voting strength. Be that as it may, it is quite clear that a handler in plaintiff's position cannot claim to represent its producers or acquire standing through them, but is limited to seeking redress for actual harm, if any, to it. Queensboro Farm Products Inc. v. Wickard, 137 F.2d 969 (2d Cir. 1943). Further, it seems clear to the court that the one man one vote rule under Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Reynolds v. Sims, *supra*, and other cases, is designed more to protect the civil rights of individuals and not the regulation of an industry from an economic point of view. The Agriculture Marketing Act is designed to assure orderly marketing conditions and Congress was perfectly within its province in requiring more than a majority vote before an agreement or marketing order which would affect producers and require their support, could be put into effect. Actually in recent years many statutes requiring more than a majority vote have been upheld. Brenner v. School District of Kansas City, Mo., 315 F.Supp. 627 (W.D.Mo.1970) (three judge court upheld requirement of two-thirds vote for school bonds); Bogert v. Kinzer, 93 Idaho 515, 465 P.2d 639 (same); Adams v. Ft. Madison Community School Dist., 182 N.W.2d 132 (Iowa 1970) (60% requirement for bonds upheld). Though there were cases to the contrary, Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971), upheld a requirement of a 60% vote for the approval of public bonded indebtedness, settling this question. See also language in Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

■■ Plaintiff further attempts to rely on Minn.Stat. § 308.07 which restricts proxy voting by members of a cooperative association. The statute in fact refers to the relationship between local and central cooperatives, but apart from this, it is clear and needs no elaborate citation of authority for the proposition that where the Federal government has preempted the field, acts of Congress prevail over state law as to matters on which Congress has legislated—which it has done in this case by providing a cooperative may cast votes for its producer members.

It thus appears that the issues involved are purely legal and there is no material question of fact for decision by the court.

Accordingly,

It is ordered that defendant's motion for a summary judgment be, and the same hereby is granted and plaintiff's complaint be and hereby is dismissed.