KAREN LECRAFT HENDERSON,
Circuit Judge, dissenting in part:
The Agricultural Marketing Agreement Act (Act or AMAA), 7 U.S.C. §§ 601 et seq., authorizes the United States Secretary of Agriculture (Secretary) to issue and amend agricultural marketing orders applicable to handlers of various agricultural commodities, including almonds. Id. § 608c(l)-(2). The Act expressly requires the Secretary to submit a proposed order for approval by the handlers and the producers — with the producers, but not the handlers, wielding veto power should two-thirds of them (by number or volume produced) fail to approve. Id. § 608c(8)-(9). While lacking a veto, the handlers can challenge a marketing order before the Secretary and then in district court. Id. § 608c(15). The Act provides no express right of review to any other party. In light of “this complex and delicate administrative scheme,” the United States Supreme Court “think[s] it clear that Congress intended that judicial review of market orders issued under the Act ordinarily be confined to suits brought by handlers in accordance with 7 U.S.C. § 608c(15).” Block v. Cmty. Nutrition Inst., 467 U.S. 340, 348, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) — with the single exception that a milk producer may challenge in court an order that infringes its statutory right under the Act to receive the guaranteed minimum milk price set by the Secretary, see Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). Nonetheless, the majority maintains that as a matter of course “producers” as well “can sue to challenge agricultural marketing orders,” Maj. Op. at 538, including the appellant almond producers. I throw my lot in with the Supreme Court. Almonds do not belong on the same shelf with milk.
As the district court observed, Stark carved out a “a narrow exception” to the general rule, noted in Block, that ordinarily only handlers (and not producers) may seek review of a marketing order. Koretoff v. Vilsack, 601 F.Supp.2d 238, 244 (D.D.C.2009) (citing Stark, supra). In Stark, the Supreme Court permitted a *542 class of milk producers to challenge a marketing order that required the “settlement fund” administrator to deduct from the fund’s pooled payments a fee to be paid to milk producer co-operatives. The effect of the deduction was to reduce' the minimum “blend” price paid to the milk producers from the fund.[1] The Court concluded that, although there was “no direct judicial review granted by [the Act] for the[] proceedings,” the “authority for a judicial examination of the validity of the Secretary’s action is found in the existence of courts and the intent of Congress as deduced from the statutes and precedents.” 321 U.S. at 307-08, 64 S.Ct. 559. In particular, the Court determined that “[t]he statute and Order create a right in the producer to avail himself of the protection of a minimum price afforded by Governmental action” — a right “mandatory in character and obviously capable of judicial enforcement.” 321 U.S. at 303, 64 S.Ct. 559 (emphasis added). Noting that “the challenged deduction reduces pro tanto the amount actually received by the producers for their milk,” id. at 302, 64 S.Ct. 559, the Court explained that “[i]t is because every dollar of deduction comes from the producer that he may challenge the use of the fund,” id. at 308, 64 S.Ct. 559.[2]
In Block, as noted supra, the Court made clear that judicial review is “ordinarily ... confined to suits brought by handlers in accordance with 7 U.S.C. § 608e(15).” Block, 467 U.S. at 348, 104 S.Ct. 2450. The Court acknowledged that under Stark, “dairy producers could challenge certain administrative actions even though the Act did not expressly provide them a right to judicial review” but explained that the challenged deductions in Stark “ ‘reduce[d] pro tanto the amount actually received by the producers for their milk,’ ” thereby giving the producers “standing to object to the administration of the settlement fund.” Id. at 351, 104 S.Ct. 2450 (quoting Stark, 321 U.S. at 302, 64 S.Ct. 559) (emphasis added) (alteration in Block). “Though the producers’ standing could not by itself ensure judicial review of the Secretary’s action at their behest, the statutory scheme as a whole, the [Stark ] Court concluded, implicitly authorized producers’ suits concerning settlement fund administration.” Id. (emphasis added) (internal citation omitted). The Block court noted that in Stark the handlers “ ‘[could not] question the use of the fund, because handlers had no financial interest in the fund or its use’ ” and so, unless the producers were granted judicial review, there was “ ‘no forum’ in which this aspect of the Secretary’s actions could or would be challenged.” Id. at 351-52, 104 S.Ct. *543 2450 (quoting Stark, 321 U.S. at 309, 64 S.Ct. 559) (alteration added) (internal citation omitted).[3]
In this Circuit’s decisions permitting producers to challenge a marketing order, the injury to the producers was, as in Stark, an impairment of their statutory right to full payment, through the settlement fund, of the minimum price fixed by the Secretary for milk products. In Blair v. Freeman, 370 F.2d 229 (D.C.Cir.1966), we entertained a challenge to a price deduction in the form of a travel distance variable based on the location of the milk producer’s farm. We there concluded the appellant dairy producers had “standing to present their claim that the nearby differential provision exceeded the statutory power of the Secretary.” Id. at 234. We explained: “Since this differential is payable out of the equalization pool, the deduction reduces pro tanto the amount actually received by producers for their milk. The appellants thus have standing to invoke the protection of equity to insure that their statutory right to minimum price protection is not being improperly diminished.” Id. n. 15 (citing Stark, 321 U.S. at 290, 302-310, 64 S.Ct. 559).
Most recently, in Arkansas Dairy Cooperative Ass’n v. United States Department of Agriculture, 573 F.3d 815 (D.C.Cir. 2009), the court again permitted milk producers to challenge reductions to the minimum price they received for milk. In Arkansas Dairy, the milk producers challenged the Secretary’s interim rule that increased the “make allowance” — an amount which is intended to represent the costs to the handlers of making the end dairy products from raw milk and which is deducted from the end-use price before the blend price is computed. Relying primarily on Stark, the court held the milk producers could “bring suit under the APA to challenge the Interim Rule, which directly affect[ed] their blend prices through increased make allowances, even though the milk marketing orders w[ould] not directly affect the producer settlement fund.” 573 F.3d at 827. We explained: “The producers are aggrieved, within the meaning of the APA, by the alleged diminution of their personal rights secured under the AMAA, the Interim Rule they challenge constitutes final agency action, and they seek non-monetary injunctive relief.” Id. (citing 5 U.S.C. §§ 702, 704). The case paralleled Stark and Blair, the majority wrote, because the challenged rule “deduct[ed] funds from the value of milk before calculating the blend price guaranteed to producers, thus reducing, ‘dollar for dollar,’ the minimum price producers are guaranteed for their milk products.” Id. at 825.[4]
*544 This case is nothing like Stark or its progeny. The commodity at issue here is not milk — as in Stark, Blair and Arkansas Dairy — but almonds. And the Act confers no statutory right on a producer to receive any payment for its almonds; nor does it empower the Secretary to fix their price, as it does for milk. The Act expressly authorizes the Secretary to regulate milk prices alone. See Pescosolido v. Block, 765 F.2d 827, 830 (9th Cir.1985) (“Unlike the fixed minimum prices which must be established for milk ..., see 7 U.S.C. § 608c(5)(A), the Secretary is not empowered to fix prices for any other commodities covered by the Act. Instead, he may only employ market controls, see id. § 608c(6), in an effort to ‘effectuate the declared policy of the Act” (quoting 7 U.S.C. § 608c(4))) (emphasis in original). Milk is sui generis in this respect as in so many others.[5] As Block observed, in Stark, “judicial review of the producers’ complaint was ... necessary to ensure achievement of the Act’s most fundamental objectives' — to wit, the protection of the producers of milk and milk products.” 467 U.S. at 351, 104 S.Ct. 2450 (emphasis added). Protecting the market for raw almonds — by the appellants’ own admission a “niche” market (albeit a “lucrative” one), Appellants’ Br. 10 — presents no such compelling necessity.[6]
For the foregoing reasons, I respectfully dissent.[7]

. Under the milk marketing regime, the Secretary fixes different minimum raw milk prices depending on the end-use to which a handler puts it (e.g., fluid milk, cream, ice cream). The payments are pooled in a settlement fund and, after certain administrative expenses are deducted, an average “blend price” is calculated which is the price each producer actually receives. See Edaleen Dairy, LLC v. Johanns, 467 F.3d 778, 779-80 (D.C.Cir.2006). Thus, any deduction from the fund (such as the co-operative payment in Stark) reduces the price each producer is paid.

. The Court indicated that the availability of review for marketing orders is limited:
It is suggested that such a ruling puts the agency at the mercy of objectors, since any provisions of the Order may be attacked as unauthorized by each producer. To this objection there are adequate answers. The terms of the Order are largely matters of administrative discretion as to which there is no justiciable right or are clearly authorized by a valid act. United States v. Rock Royal Co-op., 307 U.S. 533 [59 S.Ct. 993, 83 L.Ed. 1446 (1939)]. Technical details of the milk business are left to the Secretary and his aides.
321 U.S. at 310, 64 S.Ct. 559.

. The majority asserts that considering whether the producers' and the handlers' interests coincide in a particular case "would produce a chaotic case-by-case determination.” Maj. Op. at 540. But case-by-case determinations are the hallmark of administrative and judicial adjudications and the Supreme Court advocated just such an inquiiy in Bloch In this case the interests of untreated almond producers and of untreated almond handlers — both of whom will lose the profits they would otherwise earn from the sale of raw almonds — are indeed aligned.

. It was on this basis, in part, that Arkansas Daily distinguished our earlier decision in Benson v. Schofield, 236 F.2d 719 (D.C.Cir. 1956), in which the court did find precluded a suit by Massachusetts dairy producers challenging a proposed order expanding the "Greater Boston Marketing Area” to subject milk from additional towns to its minimum prices. Arkansas Dahy points out that "in Benson the court was not addressing a diminution of producers' statutorily-guaranteed blend prices, as in Stark, Blair, and the instant case, but rather an order that increased the boundaries of a marketing area to cover a greater number of handlers, an action the court held did not infringe any statutory right possessed by the producers because only handlers were affected.” 573 F.3d at 827 (citing *544 Benson, 236 F.2d at 723). The Benson court in turn had distinguished Stark on a similar ground:
[A]ppellees claim standing to vindicate a “legal wrong” because of language to be found in Stark v. Wickard. But there the Court pointed out: "It is because every dollar of deduction comes from the producer that he may challenge the use of the fund. The petitioners’ complaint is not that their blended price is too low, but that the blended price has been reduced by a misapplication of money deducted from the producers' minimum price.” We still come back to the proposition, as the Stark case points out, that absent “justiciable individual rights," (italics ours) the detriment complained of is damnum absque injuria.
236 F.2d at 723.

. Milk is far more extensively regulated under the Act than the other covered commodities. Compare 7 U.S.C. § 608c(5) with id. § 608c(6).

. All of the extra-Circuit cases the majority cites to support its position involved milk prices. See Maj. Op. at 539 (citing Farmers Union Milk Marketing Coop. v. Yeutter, 930 F.2d 466, 474 (6th Cir. 1991); Alto Dairy v. Veneman, 336 F.3d 560, 567-69 (7th Cir. 2003); Minn. Milk Producers Ass’n v. Madigan, 956 F.2d 816, 817-18 (8th Cir. 1992)). The only extra-Circuit case the majority cites as contra involved navel oranges. See id. (citing Pescosolido, 765 F.2d at 831-32.)

. I concur in the majority's affirmance of the district court's dismissal of the three producer-retailers’ claims for failure to exhaust administrative remedies.