David SAPP, individually and as co-partner trading as Dorset Apartments; Brodney Corp., a Delaware corporation, Plaintiffs,

v.

Neal J. HARDY, Commissioner, Federal Housing Administration; Henry M. Winchester, Jr., District Director, Federal Housing Administration; and Kevy Kaiserman, Defendants.

Civ. A. No. 2433.

United States District Court
D. Delaware.

March 30, 1962.

---

1. Plaintiff filed no answer to the motion for reargument within the time permitted by our Rule 16.

H. B. Rubenstein and Frederick Knecht, Jr. (of Leshem & Rubenstein), Wilmington, Del., Michael H. Egnal, Philadelphia, Pa., for plaintiffs.

Stanley C. Lowicki, Asst. U. S. Atty., for defendants Hardy and Winchester.

Harry Rubenstein and Alfred Fraczkowski, Wilmington, Del., for defendant Kaiserman.

RODNEY, Senior District Judge.

This is a motion under Rule 12(b) (1), F.R.Civ.P., 28 U.S.C.A., to dismiss the action because of the alleged lack of jurisdiction in the Court of the subject matter of the action.

The action generally seeks to prevent the consummation of a commitment for the insurance of a mortgage by the Federal Housing Administration and covering an apartment house proposed to be erected at 2401 Pennsylvania Avenue in Wilmington, Delaware.

The individual plaintiff is described as a citizen of the United States and as co-owner of the "Dorset," an apartment house in Wilmington. The corporate plaintiff is also alleged to be a citizen of the United States and the owner of another apartment house in Wilmington known as "1401."

The defendant Neal J. Hardy is sued as Commissioner of the Federal Housing Administration and Henry M. Winchester, Jr., as District Director of that agency, and both are sued individually. Kevy Kaiserman is designated as sponsor of the project.

From the complaint it would seem that back in 1958 requests for commitments were made to the former local District Director of the Federal Housing Administration on behalf of both of the present plaintiffs and by those then in-

terested in the site at 2401 Pennsylvania Avenue. These requests were of a formal or informal nature. No definite commitment was then made and the present plaintiffs erected their respective buildings by conventional methods. A definite commitment is now contemplated in connection with the location 2401 Pennsylvania Avenue and is now imminent, and the purpose of this suit is to prevent its consummation.

The present complainants contend that the proposed plan for a building at 2401 is not economically sound and that there is no need for such a building in the locality, that the commitment for federal aid for such building is therefore without statutory authority, arbitrary, an abuse of discretion and contrary to the rights of the plaintiffs.

The defendants have moved to dismiss the action for lack of jurisdiction over the subject matter which is another way of saying that the plaintiffs have no standing to bring the action and that consequently there is no matter upon which the Court can act.

The plaintiffs state that the jurisdiction of the Court and the right of the plaintiffs to sue may be found in the National Housing Act, 12 U.S.C.A. § 1701 et seq., in the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and in the general equity jurisdiction of the Court.

1. Reversing the stated order, we first consider whether there is any general equity jurisdiction as a basis of the present plaintiffs' claim. It is clear that the Federal Housing Administration is an agency of the Executive Department of the Government, created as such by Congress. There is to me no apparent or inherent right of general review or control by the Judicial Department of the Government of the Executive Department unless such right of review or control may be gathered from some appropriate legislation.

Where Congress has created an administrative board, the Supreme Court has said:

"All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced."[1]

■ The general equity power inherent in a district court does not itself confer jurisdiction, but can implement jurisdiction otherwise existing and allows the equitable molding of necessary remedies and procedures. The jurisdiction of the court as such exists only as granted by some law of the United States. I think no jurisdiction exists in the present case by virtue of the so-called "general equity power" itself, but this inherent power may be used here if the suit complies with the general grant under 28 U.S.C. § 1331 over a "case arising under the Constitution, laws or treaties of the United States." However, under this section there must be some person entitled to a remedy at the hands of the court and entitled to invoke the equity power of the court. This legal right or standing of a party must be shown before a "case" is presented and the equitable jurisdiction of this Court can come into play.[2] This right or standing of the present plaintiffs will now be considered.

1. Switchmen's Union v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61.

The above cited case also says:

"Generalizations as to when judicial review of administrative action may or may not be obtained are of course hazardous. Where Congress has not expressly authorized judicial review, the type of problem involved and the history of the statute in question become highly relevant in determining whether judicial review may be nonetheless supplied."

The Court there was discussing the right of review under the precise provisions of a particular Act and, of course, if general equity power gave a general right of review, such particularization would be unnecessary.

Switchmen's Union v. Board was determined in 1943 and in 1946 the Administrative Procedure Act was adopted regulating appellate proceedings of all agency action. To this Statute, later reference must be made.

2. Even if any equitable jurisdiction of the Court was deemed available under 28

■ By amendment to the complaint, the plaintiffs have deleted the designation of the plaintiffs as "taxpayers" and substituted the word "citizens." The purpose of the amendment is not clear. In Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078, the Court held the interest of a federal taxpayer was too remote, indeterminable and uncertain to give him standing to attack the constitutionality of the statute then considered. The standing of a taxpayer in cases similar to the present one is subject to the same limitations as the cited case, and it would seem that a mere citizen has even less standing than a taxpayer.[3]

I, therefore, conclude that the present plaintiffs have no standing to maintain the action as taxpayers or citizens.

■ The only discernible claimed standing to maintain the present action would seem from the complaint to arise from the fact that as owners of other apartment houses in the general locality plaintiffs would suffer some potential loss of income and patronage if the proposed mortgage on 2401 Pennsylvania Avenue becomes effective. It will be borne in mind, too, that there is no suffering of a present loss but only a possibility of a future loss. It is not certain that any tenant of the apartment houses of the plaintiffs would leave his present location or that, when the new building is completed, the then demand for accommodations would not require all of the apartments.

The fact that plaintiffs allege they will suffer financial loss because of the competition from defendant's building does not satisfy the rules of standing to sue. In Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374, jurisdiction was denied over a suit by electric power companies to enjoin the allegedly illegal and unconstitutional loans by the Secretary of Interior to several municipal power companies. The Court denied plaintiff's standing to bring the suit because they had no legally recognized right to be free from competition of a legal character and their losses were therefore damnum absque injuria.

A very similar case arose recently in the District of Columbia in which the Circuit Court reached the same conclusion.[4]

Plaintiffs here are in a similar position. They have not demonstrated any right to be free from legal competition in the apartment rental business. Neither have they shown that the competition expected will be of an illegal character. The allegation here that the competition will be illegal because the governmental action creating or supporting the competitor is not sufficient alone to make the competition itself illegal. United Milk Producers of New Jersey v. Benson, 1955, 96 U.S.App.D.C. 227, 225 F.2d 527; see Alabama Power Co. v. Ickes, supra. There is a lack of any substantial injury to a legally recognized right and plaintiffs have no standing to attack either the constitutionality or legality of defendant's actions.

2. We are referred to the National Housing Act as one of the bases showing the right of the present plaintiffs in this case. We have examined said Act and can find no material provisions other than that at the conclusion of Section 1702 (12 U.S.C.A. § 1702), which merely states that the commissioner shall " * * * be authorized, in his official capacity, to sue or be sued in any court of competent jurisdiction."

We see nothing in this Section determinative of the present question. It has

---

U.S.C. § 1331, there must also be shown the jurisdictional amount of $10,000, which is not at all clear in this case. This matter, however, is not now considered because of the matters subsequently appearing.

3. Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108.

4. Kansas City Power & Light Co. v. McKay, 1955, 96 U.S.App.D.C. 273, 225 F. 2d 924, cert. denied, 350 U.S. 884, 76 S. Ct. 137, 100 L.Ed. 780.

**606**

been held that the quoted language was a mere waiver of sovereign immunity and did not create a cause of action or jurisdiction where none previously existed. Choy v. Farragut Gardens, D.C., 131 F.Supp. 609, 613.

■ 3. We are, therefore, relegated to the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. and find the provision relied upon by the plaintiffs at Section 1009(a). This Section provides:

> "Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

A convincing analysis of the legislative history and meaning of this Section in Kansas City Power and Light Co. v. McKay, 1955, 96 U.S.App.D.C. 273, 225 F.2d 924, 931–933, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780, demonstrates that the words, any person suffering legal wrong, required a showing that some personal legal right of the plaintiff had been invaded and thus preserved the standing requirements heretofore discussed; and that "adversely affected or aggrieved * * * within the meaning of any relevant statute" required the plaintiff to cite as relevant one of the several federal statutes applying to federal agencies which use these words to describe a person entitled to review. The Kansas City Power case concluded that the private power companies could not demonstrate any "legal wrong" or cite any relevant statute under which they were "adversely affected or aggrieved." The Supreme Court denied certiorari in that case, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780, and it has been uniformly followed in later cases, e. g., Gart v. Cole, 2d Cir. 1959, 263 F.2d 244, 250; Taft Hotel Corp. v. Housing and Home Finance Agency, 2d Cir., 1958, 262 F.2d 307, 308; Benson v. Schofield, 1956, 98 U.S.App.D.C. 424, 236 F.2d 719, 722. Plaintiffs here are in the same position as those in Kansas City Power and can not prevail under the Administrative Procedure Act.

From the foregoing, I am convinced the complaint must be dismissed. The conclusions herein reached will be formalized by an order to be submitted.