GREGORY ELECTRIC CO., Inc., Carolina Electric Co., Inc., Cashion Electricians, Inc., and Seastrunk Electric Company, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR, an Agency of the United States Government, Defendant.

Civ. A. No. 66–569.

United States District Court
D. South Carolina,
Columbia Division.

May 29, 1967.

L. G. Funderburk, Columbia, S. C., for plaintiff.

Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., David J. Anderson, U. S. Dept. of Justice, Washington, D. C., for defendant.

### ORDER

SIMONS, District Judge.

This is an action in which plaintiffs are seeking to require defendant, United States Department of Labor, to approve and register their proposed apprenticeship program for the electrical trade in Columbia, South Carolina. The Department's Bureau of Apprenticeship and Training declined to do so when plaintiffs' program was presented to it for consideration. This action is based upon the National Apprenticeship Act and the Davis-Bacon Act. Defendant has moved to dismiss the action upon grounds that the complaint does not state a claim upon which relief can be granted under Rule 12(b) (6) of the Federal Rules of Civil Procedure in that plaintiffs lack standing to maintain the action, that the suit is in reality against the United States, that no consent has been given to maintain it, and that this court lacks jurisdiction.

The National Apprenticeship Act of 1937, 29 U.S.C.A. § 50, provides in pertinent part as follows:

"§ 50. *Promotion of labor standards of apprenticeship*

"The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the Office of Education under the Department of Health, Education, and Welfare in accordance with section 17 of Title 20."

The Secretary has delegated his responsibility under the Act to the Administrator of the Department's Bureau of Apprenticeship and Training. The Bureau follows this procedure: When a labor, management, or joint group in a particular trade and area desires to establish an apprenticeship program for that trade, they may request the Bureau Representative in their area to assist them in the establishment of a program conforming to the Bureau's guidelines. The announced policy of the Bureau has been to encourage as a standard, the establishment of one apprenticeship program in a trade in each area, such program to be jointly sponsored by labor and management. If a group of nonunion employers, such as plaintiffs, refuse, after consultation with and encouragement by the Bureau representative, to join an existing joint program, the Bureau in a directive to its agents, Circular No. 63–81, dated April 29, 1963 has authorized them to assist such nonunion groups in the establishment of their own program. This circular in part reads as follows:

"*Purpose*—To clarify policy and outline procedures with respect to the promotion of apprenticeship programs among nonunion employers in a trade and area where a local jointly sponsored trade apprenticeship program is registered and operating.

"*Background*—Bureau responsibility under Public Law 308 is to provide impartial service and assistance to all industry in the establishment of apprenticeship programs, whether or not labor-management agreements are involved; and assure that such programs contain standards that will safeguard the welfare of apprentices.

"*Basic Policy*—A registered area-wide trade apprenticeship program, sponsored jointly by labor and manage-

ment, shall be regarded as the basic standards for that trade within the geographical area covered by the program. (If there are no registered area-wide joint apprenticeship standards for the trade in the local area, then the recommended national standards for the industry or trade, where they exist, shall be used as a guide in establishing local programs.)

"A. When a non-union employer or a group of non-union employers request assistance from the Bureau in establishing an apprenticeship program in a trade and area for which a jointly sponsored apprenticeship program is already registered, the Bureau staff shall:

"1. Exert every proper effort to persuade the employer or employers to accept and participate in the existing area trade program.

"2. If there is refusal to participate in such area program, or the local joint apprenticeship committee will not permit such participation, the Bureau staff after making every proper effort to persuade the local joint apprenticeship program will then assist the employer or group of employers to establish an apprenticeship program. The standards should equal or exceed those already registered for the trade and area, as well as the basic national standards of the industry concerned as filed with the Bureau of Apprenticeship and Training."

Such circular does not appear in the Code of Federal Regulations, nor has it been published in the Federal Register.

Columbia, South Carolina has an existing registered Apprenticeship Program in the Electrical Trade sponsored by a Joint Labor Management Council which satisfies the standard of one joint program in that area. Plaintiffs were invited to join the existing joint program but determined not to do so. Plaintiffs then brought this action to compel the Bureau to approve and register their proposed program. The disadvantage plaintiffs are under and part of the injury they allege by not participating in a registered apprentice program can be determined by that portion of the Davis-Bacon Act, 40 U.S.C.A. § 276a–2 giving the Secretary of Labor authority to determine minimum wages to be paid various classes of laborers and mechanics in government construction contracts. In his regulations, 29 C.F.R. § 5.5(a) (4), the Secretary has determined that a government contractor may only employ apprentices as such (which class has minimum wage rates that are less than the journeyman classification) "only when they are registered, individually, under a bona fide apprenticeship program * * * registered with the Bureau of Apprenticeship and Training, United States Department of Labor * * *." Logically the effect of this provision is to make lower costs possible for a contractor on government projects by allowing him to pay some of his employees at apprentice rates rather than at journeyman rates which consequent opportunity to the contractor to make lower bids and obtain more government contracts.

The issues presented here by the motion to dismiss are of "standing" and this has been referred to by the Supreme Court as a "complicated specialty of federal jurisdiction". United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918 (1953). See also Davis, Administrative Law Text §§ 22.01–to–.18 (1958).

Section 10 of the Administrative Procedure Act formalizes the federal law of "standing". It provides, in part:

"§ 1009. Judicial review of agency action

"Except so far as (1) statutes preclude agency review or (2) agency action is by law committed to agency discretion.

"Rights of review

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any

relevant statute, shall be entitled to judicial review thereof." 5 U.S.C.A. § 1009 (1946).

Therefore, plaintiffs in order to have standing to maintain this action must show first that the determination complained of was not an "agency action * * * by law committed to agency discretion", or, secondly, that they have suffered a "legal wrong" or have been "adversely affected or aggrieved * * * within the meaning of any relevant statute".

■ The Administrative Procedure Act clearly precludes judicial review in situations where "agency action is by law committed to agency discretion". 5 U.S.C.A. § 1009(2). Plaintiffs in their brief imply that the Administrative Procedure Act requires an *express* statement that the agency action involved is committed to the agency's discretion. The court cannot agree with such a construction of the Act. Where the overall statutory scheme indicates discretion on the part of an administrator, it is committed to the discretion of the officer or agency within the meaning of the Statute. Panama Canal Company v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958).

■ The National Apprenticeship Act, 29 U.S.C.A. § 50 is written in very broad terms. It contains a wide grant of authority to the Secretary of Labor to develop and promote standards of training for apprentices, and to give such standards the widest possible application. This delegation of such authority recognizes a particular expertise of the Secretary of Labor in such matters. The Secretary has created an agency within the Department of Labor, the Bureau of Apprenticeship and Training, which further specializes in these matters. Should this Court substitute its judgment for that of the Bureau in determining how it should best carry out its statutory functions? The Supreme Court in Panama Canal Company v. Grace Line, Inc., supra, has indicated that such substitution of judgment, in matters of discretion

such as the one involved in the instant case, is improper.

"Section 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C. § 1009, 5 U.S.C.A. § 1009, excludes from the categories of cases subject to judicial review 'agency action' that is 'by law committed to agency discretion.' We think the initiation of a proceeding for readjustment of the tolls of the Panama Canal is a matter that Congress has left to the discretion of the Panama Canal Co. Petitioner is, as we have seen, an agent or spokesman of the President in these matters. It is 'authorized' to prescribe tolls and to change them. * * * But the exercise of that authority is far more than the performance of a ministerial act. As we have seen, the present conflict rages over questions that at heart involve problems of statutory construction and cost accounting: whether an operating deficit in the auxiliary or supporting activities is a legitimate cost in maintaining and operating the Canal for purpose of the toll formula. These are matters on which experts may disagree; they involve nice issues of judgment and choice, * * * which require the exercise of informed discretion. * * * The case is, therefore, quite unlike the situation where a statute creates a duty to act and an equity court is asked to compel the agency to take the prescribed action. * * * We put the matter that way since the *relief sought in this action is to compel petitioner to fix new tolls. The principle at stake is no different than if mandamus were sought—a remedy long restricted, * * * in the main, to situations where ministerial duties of a nondiscretionary nature are involved.* Where the matter is peradventure clear, where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law, then judicial relief is often available. * * * *But where the duty to act turns on matters of doubtful or highly debatable inference from large or*

*loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion. * * * We then must infer that the decision to act or not to act is left to the expertise of the agency burdened with the responsibility for decision."* (356 U.S. at 317–318, 78 S.Ct. at 757, emphasis added). See also Lansden v. Hart, 180 F.2d 679 (7th Cir. 1950).

A reading of the National Apprenticeship Act compels a conclusion that it is written in what the Supreme Court calls "large or loose statutory terms."

■ The decision on whether to register an apprenticeship program requires a substantial amount of judgment and expertise. Such decision may turn on many technical facts. These are clearly matters which Congress has left to the agency, and matters in which the court should not interfere.

■ Under section 10(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(a), it is settled that if Congress has failed to give a plaintiff standing to sue by the express or implied provisions of a statute then mere economic injury resulting from governmental action alone is insufficient to establish standing. Pennsylvania R.R. Co. v. Dillon, 118 U.S. App.D.C. 257, 335 F.2d 292 (1964), cert. denied sub nom. American-Hawaiian Steamship Co. v. Dillon, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964); Texas State AFL–CIO v. Kennedy, 117 U.S.App. D.C. 343, 330 F.2d 217 (1964), cert. denied, 379 U.S. 826, 85 S.Ct. 54, 13 L.Ed.2d 36 (1964); Kansas City Power and Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955), cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780; Rural Electrification Admin. v. Central Louisiana Elec. Co., 354 F.2d 859 (5th Cir. 1966); Harrison-Halsted Community Group, Inc. v. Housing & Home Fin. Agency, 310 F.2d 99 (7th Cir. 1962), cert. denied, 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 414; Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1962); Sapp v. Hardy, 204 F.Supp. 602 (D.Del.1962); Green St. Ass'n. v. Daley, 250 F.Supp. 139 (N.

D.Ill.1966). See also Braude v. Wirtz, 350 F.2d 702 (9th Cir. 1965), in which the Court held that growers, who would have to pay higher wages to American nationals because of an administrative determination excluding alien laborers from the United States, had suffered no legal injury; and Paducah Junior College v. Secretary of Health, Education and Welfare, 255 F.Supp. 147 (W.D.Ky. 1966), in which it was held that the failure to give plaintiff a financial grant under the Higher Education Facilities Act did not constitute a legal wrong. See also Tennessee Elec. Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1937); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938).

Compare F. C. C. v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), wherein the Court held financial injury sufficient to confer standing, in the context of the other facts of that case, "it [being] within the power of Congress to confer such standing to prosecute an appeal". See also Scripps-Howard Radio v. F. C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); F. C. C. v. National Broadcasting Company, (KOA), 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943); Estrada v. Ahrens, 296 F.2d 690 (5th Cir. 1961); Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570 (1964).

■ The Administrative Procedure Act requires that a person must suffer a "legal wrong because of agency action" or be "adversely affected or aggrieved by agency action within the meaning of a relevant statute," in order to invoke judicial review. That plaintiffs have suffered no legal wrong under the Davis-Bacon Act, 40 U.S.C. § 276a et seq. and regulations thereunder, which allow contractors to use apprentices on federal contract projects only where they work under a program registered by the Bureau of Apprenticeship and Training or an approved state agency, is clear from the decision of the Supreme Court in Perkins v. Lukens Steel Company, 310

U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

In the *Lukens Steel* case, the Secretary of Labor was charged with an erroneous construction of the word "locality" as applied to areas for which prevailing wage rates were to be determined. That case arose under the Walsh-Healey Act, similar in many respects to the Davis-Bacon Act from which plaintiffs' claim of irreparable injury arises. Plaintiffs there asserted that this error put them in an area which had higher rates than they would have had to pay were they placed in a proper "locality". Because of the alleged error, plaintiffs' costs were higher and their opportunities to obtain Government contracts reduced. Although the official action there was not the same as is present here, the right asserted by the plaintiffs in *Lukens Steel* is virtually identical with that asserted by plaintiffs here.[1]

 In their complaint plaintiffs claim irreparable harm in that the denial of registration is "prohibiting them from participating in competing for work in the wage and trade area where apprentices participating in a federally recognized apprenticeship program are permitted as a part of the labor force". The Supreme Court in *Lukens Steel* disposed of the argument that such an injury gives rise to any kind of legal right in contractors in the following language:

"Section 3709 of the Revised Statutes requires for the government's benefit that its contracts be made after public advertising. It was not enacted for the protection of sellers and confers no enforceable rights upon prospective bidders. * * *

"This Act's purpose was to impose obligations upon those favored with Government business and to obviate the possibility that any part of our tremendous national expenditures would go to forces tending to depress wages and purchasing power and offending fair social standards of employment. As stated in the Report of the House Committee on the Judiciary on the Bill, 'The object of the bill is to require persons having contracts with the Government to conform to certain labor conditions in the performance of the contracts and thus to eliminate the practice under which the Government is compelled to deal with sweat shops' ". 310 U.S. at 126–128, 60 S.Ct. at 876–877.

The wording of the National Apprenticeship Act, mandating the Secretary "to safeguard the welfare of apprentices", leads also to the conclusion that this type of statutory and regulatory scheme was intended to promote the interest of laborers and not contractors.[2] Just as plaintiff in *Lukens Steel* had no legal right infringed which gave it standing, plaintiffs here appear to the court to be in precisely the same position.

 Nor can plaintiffs assert that the Administrative Procedure Act, 5 U. S.C.A. § 1009, confers standing on them. The Act does not create any substantive rights. Chournos v. United States, 335 F.2d 918 (10th Cir. 1964); Kansas City Power and Light Co. v. McKay, 96 U.S. App.D.C. 273, 225 F.2d 924 (1955); Olin Industries v. N. L. R. B., 72 F.Supp. 225 (D.C.Mass.1947). It requires that in order for a plaintiff to obtain judicial review of adverse agency action he be a person aggrieved under the terms of some relevant statute. Plaintiffs are not aggrieved under the National Apprenticeship Act since it was passed for the protection of apprentices. Nor are plaintiffs aggrieved under the Davis-Bacon Act because, as *Lukens Steel* makes clear, that type of statute was passed for the guidance of the Government and

---

1. *Lukens Steel* has been legislatively reversed in a context not relevant here. 41 U.S.C.A. § 43a.

2. See Davis, Administrative Law Text § 22–04 (1959), which acknowledges this as the rationale of decision of *Lukens*

*Steel.* Although Davis concludes that the federal law of standing is unduly complicated and restrictive, his approach, labeled the *Sanders* doctrine, has not been accepted by the courts. See Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1962).

the benefit of workers. The further conclusions would also follow that Congress has not by implication given plaintiff standing to sue under these Statutes, there being no question that there are no express provisions of standing.

■ Circular 63–81, supra, cannot create a right in plaintiffs since it only offers the assistance of the Bureau of Apprenticeship and Training. Plaintiffs only desire such assistance because it comes from men with judgment and experience in setting up apprenticeship programs, and such assistance and determination to act or not to act would clearly require "agency discretion" on the part of the Administrative Agency which this court cannot review. Panama Canal Co. v. Grace Lines, Inc., supra.

■ The Federal Register Act, 44 U.S.C.A. § 305 and the appropriate regulation thereunder, 1 C.F.R. § 11.2 (1965), gives "legal effect" and "general applicability" to rules and regulations published by federal administrative agencies. Although the Administrative Procedure Act, 5 U.S.C.A. § 1002(a) (D) requires that "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency" be published in the Federal Register, the circular in this case has not been so published. Why this circular cannot bind the Secretary of Labor or create any legal rights in plaintiffs has been discussed by the Supreme Court in a similar situation in Securities & Exchange Comm. v. Chenery Corp., 332 U.S. 194, 202–203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947):

"Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity.

"In other words, problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. Or the agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule. Or the problem may be so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. In those situations, the agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."

Any other view of the circular in this case would impair the exercise of the discretion of the agency in its decision making process. See also Foreman & Clark, Inc. v. N. L. R. B., 215 F.2d 396 (9th Cir. 1954), where it was held that that section of the Administrative Procedure Act requiring publication of a rule was merely intended to protect against agency enforcement of an unpublished procedure.

In light of the foregoing it is concluded plaintiffs have not shown either a legal wrong, or that they have been aggrieved within the meaning of any relevant statute, or that they have a legal right to be free of the effects they allege the determination complained of will have upon their businesses. Likewise, it is clear that these actions are by law committed to agency discretion. Given an alternative, I might hold otherwise since the failure of defendant through its Bureau of Apprenticeship and Training

has refused to approve and register plaintiffs' separate apprenticehip program, which will have the practical effect of either requiring the nonunion employers to participate in a program controlled by the unions, or be denied an equal basis to bid on government contracts. Nevertheless, as I view the law as above analyzed, I have no such alternative, for Congress has given such authority to act to the Secretary, and plaintiffs' remedy is legislative not judicial. United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Securities & Exchange Comm. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

It is concluded that plaintiffs' complaint fails to state a claim upon which relief can be granted, and that they lack standing to maintain this action. Therefore, defendant's motion to dismiss plaintiffs' complaint is granted.

And it is so ordered.