JOINT APPRENTICESHIP AND TRAINING COUNCIL OF LOCAL 363, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and the UNITED CONSTRUCTION CONTRACTORS ASSOCIATION, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF LABOR, Thomas M. Heins, John F. Hudacs, Donald J. Grabowski, and Robert Abrams, Attorney General of the State of New York, Defendants.

No. 93 Civ. 2561 (JES).

United States District Court, S.D. New York.

Aug. 28, 1993.

Horowitz & Pollack, P.C., South Orange, NJ, for plaintiff (Sanford E. Pollack, of counsel).

Robert Abrams, Atty. Gen. of State of NY, New York City, for defendants (Jane Lauer Barker and M. Patricia Smith, Asst. Attys. Gen., of counsel).

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff brings this motion seeking a preliminary injunction enjoining defendants from effectuating a deactivation of plaintiff's status as a registered apprenticeship training program. For the reasons that follow, plaintiff's motion is denied.

### BACKGROUND

This litigation was brought by plaintiff Joint Apprenticeship and Training Council of Local 363, International Brotherhood of Teamsters, and the United Construction Contractors Association (collectively "JATC" or "plaintiff") to stop defendants New York State Department of Labor, Thomas M. Heins, John F. Hudacs, Donald J. Grabowski, and the Attorney General of the State of New York Robert Abrams (collectively "NYSDOL" or "defendants") from deregistering plaintiff as a registered apprenticeship program according to procedures set forth in various state and federal regulations. On June 28, 1993, plaintiff received a letter from defendant Grabowski as Director of Employability Development for the New York State Department of Labor communicating NYSDOL's intent to adjust its records to reflect the fact that JATC, as sponsor for the apprenticeship program it runs, no longer existed as registered. See Supplemental Complaint ("Compl."), Ex. A.[1] The NYSDOL

---

1. Defendants allege that in 1981, when NYSDOL registered the apprenticeship program sponsored by JATC, JATC was composed of Local 363, International Brotherhood of Teamsters ("Local 363") and the United Construction Contractors Association ("UCCA"). See Compl., Ex. A. NYSDOL now charges that, based on information obtained from Patrick Bellantoni as secretary-treasurer of Local 363 and further confirmed by an affidavit submitted by Local 363's counsel in another action, Local 363 no longer has a collective bargaining agreement with UCCA, and is no longer their certified bargaining representative. Id.; Affidavit of Donald J. Grabowski sworn to August 2, 1993, ("Grabowski Aff."), ¶ 12, n. 4. NYSDOL further alleges that Local 3, International Brotherhood of Electrical Workers has been certified by the NLRB as the exclusive collective bargaining agent for UCCA employees. Grabowski Aff., ¶ 12.

gave plaintiff until July 15, 1993, to produce evidence to the contrary. *Id.*

By letter dated July 8, 1993, counsel for JATC submitted a letter with preliminary information that the sponsor is, and always has been, Joint Apprenticeship and Training Council Local 363, and that UCCA had never been either listed or, therefore, registered as a sponsor. *Id.,* Ex. B. By letter dated July 20, 1993, NYSDOL extended plaintiff's time to produce evidence in response to the charge until August 5, 1993, and indicated that plaintiff's preliminary information did not sufficiently refute the charge nor warrant a change in NYSDOL's position regarding "termination" of the JATC apprenticeship program for the aforesaid fundamental changes in sponsorship. *Id.,* Ex. C. Plaintiff submitted no further information to refute NYSDOL's charge, but appeared before the Court for a Pre–Motion Conference on July 28, 1993, seeking a preliminary injunction before that August 5 date enjoining NYSDOL's proposed termination or deactivation of the apprenticeship program. Setting an expedited schedule, the Court ordered that plaintiff submit its brief in support of its motion by July 30, 1993, and that defendants respond by August 3, 1993. On August 4, after having read the parties's materials, the Court declined to issue any temporary restraining order and, for the reasons set forth herein, now denies plaintiff's motion for a preliminary injunction.

■ Apprenticeship programs exist to train unskilled workers to become skilled and, if registered by either or both the state and federal governments, receive benefits from those bodies. *See* Grabowski Aff., ¶ 4. Federal regulations permit state agencies to apply to the United States Secretary of Labor for federal recognition as a State Apprenticeship Agency or Council ("SAC"). *See Joint Apprenticeship and Training Council of Local 363 v. New York State Dep't of Labor,* 984 F.2d 589, 591 (2d Cir.1993); 29 C.F.R. § 29.12 (1992). If the state agency's standards and procedures are in conformity with federal standards, a SAC becomes federally approved and empowered to establish, for federal as well as state purposes, requirements for apprenticeship programs as well as procedures by which to determine issues such as their registration and deregistration. *Joint Apprenticeship,* 984 F.2d at 591; 29 C.F.R. § 29.12; Grabowski Aff., ¶ 6. Where no SAC has been recognized, the United States Department of Labor's Bureau of Apprenticeship Training ("BAT") assumes those responsibilities for federal purposes. Grabowski Aff., ¶ 7. The NYSDOL, as a federally recognized SAC, is authorized to determine whether apprenticeship programs comply with state and federal standards pursuant to New York's Labor Law and the federal National Apprenticeship Act (the "Fitzgerald Act"). *See id.,* ¶ 5; N.Y.Lab. Law §§ 810–818 (McKinney 1988 & Supp.1993); 29 U.S.C. §§ 50–50b (1988 & Supp. III 1992).

Plaintiff argues that while state and federal regulations set forth procedures for deregistration of registered apprenticeship programs, *see* 29 C.F.R. § 29.7; N.Y.Comp. Codes R. & Regs. tit. 12 ("12 N.Y.C.R.R."), § 601.7 (1992), none exist for deactivation. Defendants proffer evidence, however, that the NYSDOL has effectuated deactivations with respect to "innumerable" other apprenticeship programs and that the federal BAT has utilized the same procedure with programs it monitors. Grabowski Aff., ¶ 14. That affidavit explains, moreover, that deactivation differs from deregistration in that deregistration is caused by a sponsor's failure to comply with articulated standards and results in that sponsor or its union or employer participants being disqualified from reregistering within three years. *See id.,* ¶ 14, n. 5. Deactivation, by contrast, simply recognizes that a sponsor is no longer constituted as registered, and results in no debarment or other punitive action since a properly constituted sponsor may reregister immediately. *Id.*

## DISCUSSION

The standards for the issuance of a preliminary injunction in this circuit are well settled. To prevail, a moving party must establish (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decid-

edly in movant's favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Defendants argue that where, as here, plaintiff's motion seeks to preliminarily enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must establish a likelihood of success on the merits. *See Plaza Health Lab., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989); *Medical Soc'y of N.Y. v. Toia,* 560 F.2d 535, 538 (2d Cir.1977). However, even assuming, *arguendo,* that that higher standard does not apply here, plaintiff has not made a sufficient showing to warrant the issuance of a preliminary injunction.

■ Plaintiff argues that the established state or federal procedures only permit defendants to deregister such a program after a hearing, and that, as a consequence, a hearing is likewise required for the deactivation of its status as a sponsor. However, to the extent that plaintiff challenges defendants's actions as violative of state regulations, that is a matter of state law for a state court, and this Court has no jurisdiction over that claim. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 121, 104 S.Ct. 900, 911, 919, 79 L.Ed.2d 67 (1984); *Garay v. Jones,* No. 85 Civ. 6258, 1988 WL 64883, 1988 U.S.Dist. LEXIS 5313, at *5 (S.D.N.Y. June 13, 1988). With respect to its challenge under federal law and regulations, plaintiff bears the burden of establishing that defendants's deactivation procedure is inconsistent with federal law. However, plaintiff has demonstrated only that federal law is silent with respect to deactivation, not that the state deactivation procedure conflicts with a federal statutory or regulatory provision. Moreover, plaintiff has not demonstrated that deactivation is the functional

equivalent of deregistration, especially since, as defendants have demonstrated, deactivation has substantially different consequences for a sponsor than deregistration.[2]

■ Moreover, the Court is not persuaded that the Fitzgerald Act gives plaintiff a private right of action. The familiar four prong test to determine whether a court may infer a private right of action was established in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That test measures (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted, *i.e.,* whether the statute creates a federal right in favor of the plaintiff, (2) whether there is any indication of legislative intent to either create or deny a private cause of action, (3) whether an implied private remedy is consistent with the underlying purpose of the legislative scheme, and (4) whether the cause of action is in an area traditionally relegated to state law so that it would not be appropriate to infer a cause of action based solely on federal law. *Id.* at 78, 95 S.Ct. at 2087. The touchstone of that evaluation, however, is Congress's intent. *See Universities Research Ass'n v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 578, 99 S.Ct. 2479, 2488–89, 2490, 61 L.Ed.2d 82 (1979).

■ No intent to create a private right of action for program sponsors is expressed or intimated in the statutory language of the Fitzgerald Act,[3] nor can one be inferred from the statute's legislative history. *See Universities Research Ass'n, supra,* 450 U.S. at 770, 101 S.Ct. at 1461 (factors traditionally relied upon to determine legislative intent under *Cort* test are the language and focus of the statute, its legislative history, and its pur-

---

2. It should also be noted that it is not even clear that plaintiff has not been afforded a hearing sufficient to comply with due process. As noted above, defendants have given plaintiff the opportunity to respond to the claim set forth in defendants's letter dated June 28, 1993, and have afforded it an extension of time in which to do so. Plaintiff elected to supply no further information and to proceed with this application for injunctive relief instead.

3. That act, in pertinent part, reads:

The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, [and] to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship....

29 U.S.C. § 50 (1988).

pose); *Touche Ross, supra,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89 (same). As the Supreme Court has noted, "there '[is] far less reason to infer a private remedy in favor of individual persons' where[, as here,] Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." *Universities Research Ass'n, supra,* 450 U.S. at 772, 101 S.Ct. at 1462 (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1979)).

Moreover, the Congressional Record indicates Congress's clear intent to benefit the youth of America, not employers or unions, by eliminating exploitation of young workers through promotion of apprenticeship and skilled training. *See* 81 Cong.Rec. Appendix H1674–75 (July 1, 1937) (statement of Rep. Fitzgerald); 81 Cong.Rec. H6632–33 (daily ed. June 30, 1937); 81 Cong.Rec. H2600–01 (daily ed. Mar. 22, 1937). Finally, although there has been limited case authority analyzing that Act, one court has held that contractors have no standing to obtain judicial review of the U.S. Department of Labor's decision not to register their proposed apprenticeship program since the Act was intended to promote the interest of laborers, not contractors. *See Gregory Elec. Co. v. United States Dep't of Labor,* 268 F.Supp. 987, 993 (D.S.C.1967). This Court concludes therefore that there is no basis on which to infer a private right of action where, as here, neither the statutory language nor the legislative history indicate that Congress intended to create one. *See Touche Ross & Co. v. Redington, supra,* 442 U.S. at 579–80, 99 S.Ct. at 2490–91 (Brennan, J., concurring).

■ In any event, plaintiff has not demonstrated that it will be irreparably harmed by the deactivation. On that issue, plaintiff makes two arguments which are unavailing. First, it argues that the apprentices enrolled in its program will be irreparably harmed because defendants's action will cause them to lose their jobs, to fail to complete an apprentice training program, and to forfeit all credit earned towards becoming journeymen. However, even assuming, *arguendo,*

that plaintiff has standing to sue on that ground, defendants have demonstrated that all apprentices currently enrolled in plaintiff's program, if deactivated, will be offered the opportunity to transfer into other registered apprenticeship programs and will lose no earned credit, even if some should choose to transfer at a later time. *See* Defendants's Memorandum in Opposition to Preliminary Injunction, at 18, n. 12. Moreover, plaintiff can opt to continue its program as unregistered, and the apprentices could continue their apprenticeships and graduate from the JATC program. Grabowski Aff., ¶ 19. It is clear, therefore, that plaintiff's so-called irreparable injury amounts to no more than a pecuniary loss resulting from its deprivation of financial benefits otherwise available to it as a registered sponsor.

Second, plaintiff argues that its employer sponsors will be unable to compete on public work contracts without registered apprentices, and that the cost of completing current and future jobs will be increased since they will no longer have the benefit of less expensive apprentices. However, defendants have demonstrated that, unlike in cases of deregistration which have a three year bar to reregistration, a deactivated sponsor may reregister as soon as that sponsor corrects whatever deficiencies it has. It follows that plaintiff has the capacity at any time to obviate any injury by taking appropriate action sufficient to restore it to active status.

### CONCLUSION

For the reasons stated, plaintiffs's motion for a preliminary injunction is denied.

It is SO ORDERED.