## ASSOCIATED BUILDERS AND CONTRACTORS, INC. BALTIMORE METROPOLITAN CHAPTER, et al.

### v.

### John P. O'CONNOR, et al.

### Civ. No. L–99–1340.

United States District Court,
D. Maryland.

Sept. 28, 1999.

Maurice Baskin, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for the Fireguard Corp., plaintiff.

J. Joseph Curran, Jr., Jonathan R. Krasnoff, Office of the Attorney General, Baltimore, MD, for John P. O'Connor, M. Ann Edwards, Larry R. Greenhill, Sr., defendants.

Robert Matisoff, Washington, DC, Keith R. Bolek, Washington, DC, for Road Sprinkler Fitters Local Union No. 669, United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada, intervenor–defendant.

*MEMORANDUM*

LEGG, District Judge.

This case arose from an on-going labor dispute involving Road Sprinkler Fitters

Local Union No. 669 (the "Union"); the Fireguard Corporation ("Fireguard"), a sprinkler contractor; and the Baltimore Metropolitan Chapter of Associated Builders and Contractors, Inc., ("ABC"), a trade association representing contractors. The present lawsuit was brought by ABC and Fireguard against several Maryland state officials connected to the Maryland Apprenticeship and Training Council ("MATC").

The complaint alleges that MATC illegally prevented Fireguard from participating in an apprenticeship program operated by ABC, at the behest of the Union. As explained herein, the purported federal causes of action are without merit, leaving this Court with no basis for federal jurisdiction. Accordingly, the Court shall, by separate Order, grant the defendants' motion for summary judgment and dismiss this case.

## Background

Sprinkler fitters install fire-protection systems (i.e. sprinklers) in commercial buildings. Sprinkler fitting is a skilled trade with a formal apprenticeship system. The present dispute revolves around certification of and access to apprenticeship training.

Certified apprenticeship training assumes critical importance on construction projects subject to state or federal prevailing wage laws. Only those apprentices in certified training programs may be paid a lower training wage. A company whose trainees are not eligible for the lower wages would suffer a competitive disadvantage in bidding for public sector jobs.

Before a certified apprenticeship program can operate, it must receive regulatory approval. The National Apprenticeship Act, 29 U.S.C. § 50, grants the Secretary of Labor authority to promote and regulate apprenticeship training programs. Some apprenticeship programs are regulated directly by the federal government through the Bureau of Apprenticeship and Training ("BAT") within the Department of Labor.[1]

In certain states, however, the primary responsibility for regulating apprenticeship programs has been delegated to qualified state agencies. In Maryland, the Maryland Apprenticeship and Training Council ("MATC"), oversees all apprenticeship training within the state. *See* Md.Code Ann., Labor and Employment, §§ 11–401 *et seq.* MATC consists of 12 representatives, appointed by the state governor, who are drawn from employers, employees, and the general public. *See id.* at § 11–403.[2]

Prior to the events giving rise to this lawsuit, apprentice sprinkler fitters from both Fireguard and Reliance were trained through a program operated jointly by labor and management interests.[3] On June 25, 1998, however, ABC applied for certification of a nonjoint sprinkler fitter apprenticeship training program. (*See* Ex. 1 to Def. Mem. in Opp. to Mot. for Prelim. Inj.).[4]

Two separate approvals must be received before an apprentice in Maryland

1.  *See Associated Builders and Contractors, Inc. v. Herman,* 166 F.3d 1248, 1251 (D.C.Cir. 1999) (describing regulatory framework under the National Apprenticeship Act).

2.  The Maryland Apprenticeship and Training Program ("MATP") functions as a secretariat for the Council. MATP is part of the Maryland Department of Labor, Licensing, and Registration. The Director of MATP, Ms. Ann Edwards, is named as a defendant, along with Mr. Larry Greenhill, the Chairperson of MATC, and John P. O'Connor, Secretary of the Department of Labor, Licensing, and Regulation. Due to Eleventh Amendment immunity, these individuals, rather than MATC, the entity who actually withheld approval of Fireguard's application, are named in the complaint.

3.  "Joint" programs refer to those in which a recognized collective bargaining agent participates in the operation of the program. Conversely, "nonjoint" refers to apprenticeship programs without any participation by labor interests.

4.  Along with the complaint, the plaintiffs filed a substantial memorandum in support of their motion for a preliminary injunction. The defendants filed a equally detailed memorandum in opposition. After a telephone confer-

can begin a certified training program. The first step is the approval by MATC of the proposed course of study and training. MATC approved ABC's proposed program at its July 14, 1998 meeting. (*See* Exh. 2 to Def. Mem.). The parties agree that whether or not to approve a proposed program is within MATC's discretion, subject, of course, to the governing laws and regulations. As discussed in more detail below, in certain circumstances a union may block the approval of a proposed new training program.

After a program is approved, an employer wishing to place apprentices in the program must execute and file an employer acceptance agreement. These employer agreements bind the employers to uphold the standards and requirements of the approved apprenticeship program. On August 13, 1998, ABC submitted to MATC executed employer agreements for two companies, Reliance Fire Protection, Inc. ("Reliance") and Fireguard. ABC claims that once a program has been approved, MATC had no authority to withhold approval of an individual company's entry into the program.

MATC, however, declined to immediately approve the submitted agreements. On September 3, 1998, MATC requested additional information as to whether either company was subject to a collective bargaining agreement. As authority for its request, MATC cited a provision of the Code of Maryland Regulations ("COMAR") governing its operations. The regulation, at that time, read as follows:

> Under a *program proposed for registration by an employer or employer's association,* where the standard collective bargaining agreements or other instru-

ments provide for participation by a union in the operation of the substantive matters of the apprenticeship program, and the participation is exercised, written acknowledgment of union agreement of "no objection" to the registration is required. Where no participation is evidenced and practiced, the employer or employers' association shall furnish to any union local, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. In addition, upon receipt of the application and apprenticeship program, the Council shall send promptly by certified mail to the union local another copy of the application and the apprenticeship program, together with a notice that union comments shall be accepted for 30 days after the date of the Council transmittal.

COMAR 09.12.43.03G (1998) (emphasis added).[5] MATC, which knew that both employers had been parties to collective bargaining agreements in the past, refused to register the employer acceptance agreements without further information as to Fireguard's and Reliance's collective bargaining statuses.

On January 12, 1999, MATC held a hearing to consider the pending applications of Fireguard and Reliance. At the hearing, the Union and MATP officials argued that MATC had authority to delay approval of the employer agreements pending further investigation of the labor issues. ABC disagreed, claiming that MATC was acting *ultra vires* in refusing to register the agreements. Because of the disputed legal issue, MATC postponed a decision until its next meeting.[6]

ence with the Court, the parties, including the Union intervenor, agreed that no further discovery was required and filed brief motions for summary judgment. The summary judgment motions rely on the arguments made in the initial memoranda, which will be referred to as "Def. Mem.", "Pl. Mem." and "Interv. Mem.", respectively.

**5.** The relevant section of COMAR has been redesignated twice in recent years. MATC, in

its September 3, 1998 letter, referred to COMAR 24.04.02.03G, which had recently been recodified as COMAR 09.12.43.03G. In March 1999, all of title 9, subtitle 12, chapter 43, was repealed and replaced by a reorganized set of regulations. The language of regulation .03G is now at COMAR 09.12.43.03E.

**6.** The parties differed on the importance of ABC's having received prior approval for its program. MATC took the position that be-

On April 6, 1999, MATC voted 4–2 to reject the registration of Fireguard and Reliance in the ABC sponsored program.[7] The rejection occurred despite the recent decision of the District of Columbia Circuit in *Associated Builders and Contractors, Inc. v. Herman,* 166 F.3d 1248 (D.C.Cir. 1999). In that case, the D.C. Circuit, under the federal Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* ordered the federal BAT to allow an employer engaged in a labor dispute to enroll its apprentices in an approved non-joint program. At the April 6 hearing, ABC argued, to no avail, that the D.C. Circuit case controlled the present situation and that MATC had no legal authority to deny registration of the employer acceptance agreements.

ABC and Fireguard[8] filed the present lawsuit in response to the MATC decision. The complaint contains five counts: three federal causes of action and two based on alleged Maryland statutory violations. All five counts stem from MATC's refusal to register Fireguard's employer acceptance agreement. Count one alleges a violation of the Supremacy Clause and preemption by the National Labor Relations Act. Count two claims that MATC violated the plaintiffs' rights in violation of 42 U.S.C. § 1983. Count three alleges a violation of the National Apprenticeship Act, 29 U.S.C. § 50. Count four alleges a violation of subtitle 4 of title 11 of the Maryland Labor & Employment article. Count five invokes the Maryland Administrative Procedure Act, Md.Code Ann. State Government §§ 10–101 *et seq.*

Along with the complaint, the plaintiffs filed a motion for a preliminary injunction. The Union, which had participated in the administrative proceedings prior to MATC's vote to deny the registrations, sought, and was granted, leave to intervene.[9] The parties have agreed that the record is complete and that the case can be resolved on dispositive motions. Accordingly, the parties filed cross motions for summary judgment in early July 1999. The Court held a hearing on the summary judgment motions on July 15, 1999.

### Discussion

*Summary Judgment Standard*

The Court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from

---

cause no employers had actually entered the ABC program, it was essentially a shell program and that MATC could further investigate the collective bargaining status of the proposed entrants before giving final approval. ABC argued that once approval was received, any possible right to Union involvement in the application process had passed. From subsequent developments, it appears unlikely that MATC would have approved ABC's program had it specifically referenced Fireguard or Reliance by name. Whether MATC would have had authority to do so is debatable following the *ABC v. Herman* decision. In event, that issue, which goes to the question of whether MATC complied with its governing regulations, can only be answered by a court of appropriate jurisdiction.

7. The next regularly scheduled meeting after January 12, 1999, was March 9. MATC, due to

the lack of a quorum, did not conduct business on that date. The April 6 meeting was specially arranged to address the pending registration applications. (*See* Exh. 12 to Def. Mem.).

8. Initially, both Fireguard and Reliance sought to participate in the ABC-sponsored program. Before the lawsuit was filed, however, Reliance settled its disagreements with the Union and resumed sending its apprentices to the joint program it had previously used.

9. The plaintiff has filed a motion for reconsideration of the order granting the motion to intervene. After considering the pleadings, the Court finds that the Union meets the requirement of Fed.R.Civ.P. 24(a)(2) and shall, by separate Order, deny the motion for reconsideration.

them, in the light most favorable to the non-moving party. *See Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

Material factual disputes are "genuine" only if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

*Jurisdictional Issue*

The initial, and dispositive, issue is whether this Court has jurisdiction over this case. The defendants have moved for summary judgment on the ground that the plaintiffs have failed to establish a basis for federal jurisdiction in counts one, two or three. According to the defendants, because there is no valid federal claim, the remaining counts, which allege breaches by a state agency of state law, should be heard in state court.

■■■ Counts one (supremacy clause) and three (National Apprenticeship Act) fail to establish subject matter jurisdiction. The Constitution's supremacy clause "is not a source of any federal rights; it secures federal rights by according them priority whenever they come in conflict with state law." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). As such, there is no independent cause of action for Supremacy Clause violations. As for count three, other courts to consider the issue have explicitly found that there is no private right of action under the National Apprenticeship Act. *See Joint Apprenticeship and Training Council of Local 363 v. New York State Dept. of Labor*, 829 F.Supp. 101, 104–05 (S.D.N.Y. 1993); *Gregory Electric Co. v. U.S. Dept.*

*of Labor*, 268 F.Supp. 987, 993 (D.S.C. 1967). Accordingly, plaintiffs' right to remain in federal court hinges on count two, the § 1983 claim.[10]

■■■ Government interference in labor-management disputes can be the basis for § 1983 claims. The plaintiffs argue that this case fits squarely within the Supreme Court's holdings in *Golden State Transit Corporation v. City of Los Angeles*, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) and 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). If so, then federal jurisdiction exists for the § 1983 claim, and this Court can exercise supplemental jurisdiction over the two state law counts. The defendants, however, seek to differentiate the present situation from what they view as the more blatant and egregious interference that occurred in *Golden State*.

*Golden State* arose from the attempt by the City of Los Angeles to force an end to a labor dispute between a taxicab company and its striking drivers. Los Angeles refused to renew the operating franchise of a taxicab company whose operations were suspended as a result of a strike at the time the matter came before the city council. The City's Board of Transportation Commissioners had previously recommended renewal of the franchise. *See id.* at 609, 106 S.Ct. 1395. On the day the City Council was to consider to matter, the driver's union struck Golden State, forcing the company to suspend operations. The City Council approved the franchise renewal applications from other competitors, but postponed a decision on Golden State's application and eventually allowed the franchise to lapse. *See id.*

The Supreme Court held that the City's action was preempted by the National Labor Relations Act and its endorsement of the "free use of economic weapons." *Id.* at 617, 106 S.Ct. 1395. The Court's rationale was as follows: Congress, through the various federal labor laws, has restricted or

**10.** Without explicitly conceding that counts one and three did not provide a basis for federal jurisdiction, plaintiffs' counsel focused his argument during the July 15 hearing on the viability of the § 1983 claim, as did counsel for the defendants and the intervenor.

banned entirely certain practices, e.g. secondary strikes. Any party is free to use the remaining "economic weapons" to achieve its desired terms and conditions of employment. In *Golden State*, the driver's union had the right to strike and the taxi company had the right to attempt to hold out long enough to force concessions from the union. The Court construed the City's action as improper interference with the on-going struggle and ruled that "the city was preempted from conditioning Golden State's franchise renewal on the settlement of the labor dispute." *See* 475 U.S. at 618, 106 S.Ct. 1395.

■ The plaintiffs assert that MATC's refusal to register Fireguard's employer acceptance agreement constitutes the same actionable interference found in *Golden State*. The Court disagrees. The present situation presents much more ambiguity than did the actions of the Los Angeles City Council. MATC is a state agency charged with ensuring the welfare of Maryland apprentices. The MATC decision was taken after several hearings and under disputed factual circumstances.[11] The plaintiffs may well be correct that this state agency has acted in violation of state law. They have not shown, however, undisputed facts sufficient to demonstrate that MATC acted in violation of their federally secured rights.

The D.C. Circuit decision in *ABC v. Herman* is relevant to the issue of whether MATC was correct in its decision, but not as to this Court's jurisdiction. The plaintiffs confuse the issue of whether MATC violated state law with the entirely separate question of whether MATC's action constituted impermissible interference with Fireguard's wielding of its legal right to use "economic weapons" in a legal dispute. MATC may very well have adopted an indefensible legal position. If so, the Maryland state courts are capable of granting the necessary relief. As to the question of impermissible interference, the present factual record does not support such a finding.[12]

The plaintiffs' mistakenly view § 1983 as a general grant of jurisdiction for federal courts to review any state agency decision that may impinge on a labor dispute. The plaintiffs' frustration with the refusal of MATC to reach the same conclusion as did the D.C. Circuit in *ABC v. Herman*, does not give this Court jurisdiction to force MATC's hand.

The Court acknowledges that *Golden State* provides authority for federal courts to police state and municipal administrative actions to prevent violations of federal rights. It is clear, however, that the violation of a federal right must be clear and unequivocal, so that the power of federal law and federal courts to override the decisions of state agencies is exercised only in extraordinary circumstances.

Consider, for example, a hypothetical municipal zoning board which denies a variance to a company seeking to expand its facilities in the midst of a strike. A federal court would be on extremely shaky ground were it to reverse the zoning board and order injunctive relief solely on the basis of affidavits from the aggrieved party stating that the board impermissibly acted to further the interest of the striking employees, thereby violating the companies' federal rights. Yet, that is exactly

11. All three parties have submitted affidavits purporting to explain the true circumstances leading up to and the motivation behind the final MATC vote. *See* Henderson Affidavit (attachment to Pl. Mem.); Avallone and Taylor Affidavits, (attachments to Def. Mem.); and Dabbondanza Affidavit (attachment to Interv. Mem.).

12. In *Golden State*, the district court found 1) "that it was undisputed that the sole basis for refusing to extend [Golden State's] franchise was it labor dispute," 2) "that the Council had threatened to allow Yellow Cab's franchise to terminate unless it entered into a collective bargaining agreement" and 3) "that the Council had denied the company an essential weapon of economic strength—the ability to wait out a strike." *Golden State I*, 475 U.S. at 611–12, 106 S.Ct. 1395 (internal quotations omitted). At this time, the only clearly established fact in this case is that MATC voted 4–2 to deny the applications of Reliance and Fireguard.

446

what the plaintiff requests this Court to do in the present situation.

Established procedures for seeking judicial review of allegedly improper administrative action exist. In this case, rather than taking advantage of those procedures, the plaintiffs have asked a federal court to invalidate an unfavorable ruling by a state deliberative body. Having found that the ruling in question does not constitute a § 1983 violation, this Court is left with no viable basis for federal jurisdiction. Accordingly, the Court shall grant the defendant's motion for summary judgment as to counts one, two, and three and dismiss the remaining state law claims for lack of subject matter jurisdiction.

### Conclusion

For the aforementioned reasons, the Court shall GRANT the defendant's Motion for Summary Judgment in its entirety.